McKEE FOODS KINGMAN and
McKEE FOODS CORPO-
RATION, Plaintiffs,

v.

KELLOGG COMPANY, Defendant.

No. 1:05–CV–254.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Dec. 29, 2006.

Bruce R. Ewing, Lile H. Deinard, Dorsey & Whitney, LLP, New York, NY, Richard W. Bethea, Jr., Chambliss, Bahner & Stophel, PC, Chattanooga, TN, for Plaintiffs.

John G. Jackson, Chambliss, Bahner & Stophel, PC, Chattanooga, TN.

Anthony J. McFarland, Paige W. Mills, Bass, Berry & Sims, Nashville, TN, Robert J. Lenihan, Troy, MI, for Defendant.

## *ORDER*

MATTICE, District Judge.

Before the Court is Defendant's Motion to Dismiss [Court Doc. No. 16–1]. Defendant moves the Court to dismiss Plaintiffs' declaratory judgment action, arguing issues of subject matter jurisdiction, discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and personal jurisdiction. In the alternative, Defendant moves the Court to transfer venue to the Eastern District of Michi-

gan pursuant to 28 U.S.C. § 1404(a). The Court will address each of Defendant's arguments in turn.

## I. STANDARDS

### A. Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir.2004). The complaint must contain either "direct or inferential allegations respecting all the material elements to sustain a recovery . . . ." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations and citations omitted). The Court must determine not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In making this determination, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Arrow*, 358 F.3d at 393; *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999). The Court need not accept as true mere legal conclusions or unwarranted factual inferences. *Id.*

### B. Transfer of Venue

Transfer of venue under 28 U.S.C. § 1404(a) requires a two-part analysis. First, a defendant must identify an alternate forum in which venue is proper. *See id.* Next, the defendant must show that the convenience of the parties and witnesses, and the interest of justice, warrant transfer. *See id. Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). These burdens are significant. Courts should not disturb a plaintiff's choice of forum unless the defendant makes substantial showings of convenience and justice. *See Hoffman v. Blaski*, 363 U.S. 335, 365–66, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

## II. FACTS

Plaintiff McKee Foods Corporation is a Tennessee company with its principal place of business in Tennessee. (Court Doc. No. 24–4, McKee Decl. 1.) Plaintiff McKee Foods Kingman, a wholly owned subsidiary of McKee Foods Corporation, is an Arizona corporation with its principal place of business in Arizona. (*Id.*) Defendant Kellogg Company's principal place of business is in Michigan. (Court Doc. No. 16–19, Pilnick Decl. 1.) Both Plaintiffs and Defendant are involved in the sale of, *inter alia*, snack food products. Plaintiffs sell a crisped rice and marshmallow bar under the mark LITTLE DEBBIE MARSHMALLOW TREATS, while Defendant markets a similar product under the RICE KRISPIES TREATS mark.

On July 11, 2005, Defendant's outside counsel sent a letter to the C.E.O. of Plaintiff McKee Foods Corporation in which it accused Plaintiffs of trademark and trade dress infringement, as well as false advertising. Through counsel, Defendant expressly accused Plaintiff McKee Foods Corporation of infringing Defendant's federally registered MARSHMALLOW

TREATS mark and the trade dress associated with Defendant's RICE KRISPIES TREATS mark. (Court Doc. No. 1–6, Letter from Melvin Drozen to Jack McKee 1–2 (July 11, 2005).) Defendant also accused Plaintiff McKee Foods Corporation of false advertising based on the phrase "New! More Like Homemade!," which appeared on the trade dress associated with Plaintiffs' LITTLE DEBBIE MARSH-MALLOW TREATS mark. (*Id.* 2–3.) Defendant's letter concluded by requesting that Plaintiffs immediately:

- Cease and desist from infringing the Kellogg federally registered trademark in both the plural and singular form and well-recognized trade dress;
- Account for profits that have been made by McKee as a result of the use of Kellogg Company's valuable intellectual property;
- Remove from the product's packaging, advertising and promotional materials and information, including Internet Web Sites, the express or implied claim that the McKee product is "more like homemade" or otherwise superior to the competitive Kellogg product in taste or other attribute, absent appropriate and verifiable substantiation.

(*Id.* 3–4). Defendant's counsel closed the letter by remarking:

We would like to resolve this matter informally without the need for more costly challenge mechanisms. Please respond by close of business July 20, 2005, with your intentions in this regard or our client reserves the right to take further action necessary to preserve the valuable good will associated with its products and its related intellectual property.

(*Id.* at 4.)

After several electronic mail requests for an extension of time in which to respond to Defendant's letter, Plaintiffs' counsel issued a seven-page substantive response on September 15, 2005. (*See* Court Doc. No. 16–5, Letter from Lile Deinard to Melvin Drozen (Sept. 15, 2005).) This letter unequivocally, and in great detail, denied all of Defendant's claims. (*See id.*) It closed by stating:

To summarize, Kellogg Company's claims of trademark infringement, trade dress infringement, and false and misleading advertising claims are *ipso facto* devoid of any merit. Kellogg Company has no intellectual property rights in the phrase "marshmallow treats", [sic] whether for recipes, for products, for cereal or any other product, service or thing.

We trust that this letter addresses the concerns of your client to your satisfaction. However, if you wish to discuss these issues further, please give me a call.

(*Id.* 7.)

The following day, on September 16, 2005, Plaintiffs filed the instant action. (*See* Court Doc. 1–1, Compl.) Plaintiffs presented Defendant with a waiver of service pursuant to Federal Rule of Civil Procedure 4(d) on or about December 30, 2005. (Court Doc. No. 16–7, Electronic Mail from Lile Deinard to Lisabeth Coakley (Dec. 22, 2005).)

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Defendant asserts that the Court lacks subject matter jurisdiction over Plaintiffs' declaratory judgment action because Plaintiffs' Complaint fails to allege a justiciable controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* "The existence of an 'actual controversy' in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th

Cir.1997) (citations omitted); *see also* 28 U.S.C. § 2201(a). *See generally* U.S. Const. art. Ill. A justiciable controversy is "distinguished from a difference or dispute of a hypothetical or abstract character .... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *Aetna Life Ins. Co. of Hartford v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

Plaintiffs must bear the burden of establishing subject matter jurisdiction. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991) (holding that a plaintiff must prove that the court has jurisdiction over its complaint). In deciding whether the plaintiff has carried its burden to show that a justiciable controversy exists, "the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Int'l Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1210 (7th Cir.1980); *see also Harper v. AutoAlliance Intern., Inc.,* 392 F.3d 195, 210 (6th Cir.2004) (noting that subject matter jurisdiction is determined at the time the initial pleading is filed).

In the context of a party seeking a declaration of non-infringement of trademark rights, the Court of Appeals for the Federal Circuit would require Plaintiffs to establish two points to demonstrate that a real and substantial controversy exists: (1) that Defendant's conduct created a real and reasonable apprehension of liability on the part of Plaintiffs, and (2) that Plaintiffs engaged in a course of conduct which has brought it into adversarial conflict with Defendant. *Windsurfing Intern., Inc. v.*

*AMF Inc.,* 828 F.2d 755, 757–58 (Fed.Cir. 1987); *accord Robin Prods. Co. v. Tomecek,* 465 F.2d 1193, 1195 (6th Cir.1972) ("[A] justiciable controversy is made out upon plaintiff's showing of any indirect or implicit or covert charge of infringement or threat of suit or any conduct or course of action from which any charge or threat could be inferred." (internal quotations and citations omitted)). Absent specific direction from the United States Court of Appeals for the Sixth Circuit or objection by the parties, this Court will follow the widely adopted two-part standard in *Windsurfing.*[1]

Defendant argues that the instant action does not satisfy the first prong of *Windsurfing;* that its communications with Plaintiffs did not create a real and reasonable apprehension of liability on the part of Plaintiffs. Since the operative time in which to determine whether a justiciable controversy exists is when the Complaint is filed, all communications after Plaintiffs filed their Complaint are irrelevant for this particular inquiry. *See Int'l Harvester Co.,* 623 F.2d at 1210; *see also Harper,* 392 F.3d at 210. Further, the first prong of *Windsurfing* requires the Court to examine Defendant's conduct. *See Windsurfing Intern. Inc.,* 828 F.2d at 757 (citing *Topp–Cola Co. v. Coca–Cola Co.,* 314 F.2d 124, 125–26 (2d Cir.1963)). Accordingly, and under the particular facts of the instant case, the Court will look only to Defendant's letter of July 11, 2005 to determine whether Plaintiffs harbored a real and reasonable apprehension of liability.

Defendant's initial letter to Plaintiffs explicitly accused Plaintiffs of infringing Defendant's MARSHMALLOW TREATS mark and the trade dress associated with its RICE KRISPIES TREATS mark, as

---

1. *See also ACH Food Cos. v. Wiscon Corp.,* No. 04–2589 MI/V, 2005 WL 2114056, at *4–5 (W.D.Tenn. Aug.30, 2005) (adopting the same standard to determine the existence of a justiciable controversy).

well as disseminating false and misleading promotional claims. The conclusion of the letter requested that Plaintiffs immediately cease its allegedly infringing conduct and account for profits.

Defendant argues that its letter was merely a cease and desist letter and, therefore, not sufficient to create a reasonable apprehension of liability. Defendant does not, however, refute the fact that the letter contains express accusations of infringement. The Sixth Circuit has made clear that a charge of infringement is sufficient to create a justiciable controversy within the Declaratory Judgment Act. *Robin Prods. Co. v. Tomecek,* 465 F.2d 1193, 1196 (6th Cir.1972) ("The appropriate test [to determine whether a justiciable controversy exists] is whether the course of action would be regarded by a reasonable man as a charge of infringement and was so regarded by the party seeking declaratory relief."); *Goodrich–Gulf Chems., Inc. v. Phillips Petroleum Co.,* 376 F.2d 1015, 1018 (6th Cir.1967) ("It is undisputed that where defendant has made a charge of infringement, a controversy exists which gives declaratory judgment jurisdiction ...."). Further, other courts have held that an express charge of infringement satisfies the first prong of *Windsurfing.* See, e.g., *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed. Cir.1988) ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more."); *Wright Medical Tech., Inc. v. Osteonics Corp.,* 914 F.Supp. 1524, 1529 (W.D.Tenn.1995).

Defendant attempts to distinguish the above-cited cases by pointing out that its letter contains an express invitation to settle out of court. Defendant, however, provides no authority—either binding or persuasive—that emphasizes this distinction.

Accordingly, the Court will evaluate Defendant's invitation to extra-judicial settlement as but a component of the totality of the circumstances existing between Plaintiffs and Defendant at the time Plaintiffs filed their declaratory judgment action. To do so, the Court must again examine the closing of Defendant's letter of July 11, 2005, which states:

We would like to resolve this matter informally without the need for more costly challenge mechanisms. Please respond by close of business July 20, 2005, with your intentions in this regard or our client reserves the right to take further action necessary to preserve the valuable good will associated with its products and its related intellectual property.

(Letter from Melvin Drozen to Jack McKee 4.) Assuming that the first sentence of the above-quoted paragraph is an express invitation to settle, the second sentence can fairly be read as a veiled—albeit thinly—threat of suit. First, the statement that "our client reserves the right to take further action" is, legally speaking, useless. Nothing in Defendant's letter could be construed to put it at risk of waiver or estoppel so as to warrant such a reservation. Instead, this clause can fairly be interpreted as an ultimatum: respond by the given deadline, or face "further action ...." (*Id.*) In turn, the words "further action" can be interpreted as referring to legal proceedings. Defendant, in its letter, has already demanded that Plaintiffs cease the allegedly infringing activity and account for profits. (*Id.* at 3–4.) The predictable next step would be to file suit. Thus, the closing sentence of Defendant's letter can easily—and reasonably— be interpreted as "cease infringing and account for profits or face suit." This, of course, is sufficient to impart a reasonable apprehension of liability. *See Tomecek,* 465 F.2d at 1195 (6th Cir.1972) ("[A] justi-

ciable controversy is made out upon plaintiff's showing of any indirect or implicit or covert charge of infringement or threat of suit or any conduct or course of action from which any charge or threat could be inferred.") (internal quotations and citations omitted).

Further, Defendant presents no reason why an express invitation to settle would change the significance of its express accusation of infringement and implied threat of suit. Accordingly, the Court holds that Plaintiffs have carried their burden to show that, at the time they filed the instant action, they were under a reasonable apprehension of liability. As the second prong of *Windsurfing* is not in dispute,[2] the Court further holds that Plaintiffs have proven that the instant action involves a justiciable case and controversy pursuant to the Constitution and the Declaratory Judgment Act. Accordingly, Defendant's Motion to Dismiss is **DENIED** as to its claim of lack of a justiciable controversy.

### B. Discretionary Jurisdiction

 Defendant next argues that the Court should decline to exercise jurisdiction over the instant action. The Declaratory Judgment Act grants district courts discretionary jurisdiction over actions within its purview. 28 U.S.C. § 2201 (providing that a court *"may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). This statutory discretion is broad, but not unbounded. The Sixth Circuit provides specific guidance to district courts faced with the decision of whether to hear a declaratory judgment claim. District courts should consider:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984).

Defendant takes issue with the third *Grand Trunk* factor. In support of its contention that Plaintiffs engaged in procedural fencing or a race for res judicata, Defendant argues that Plaintiffs prompted and entertained settlement discussions as a pretext while secretly securing its preferred forum by filing the instant action.

In response to Defendant's July 11 demand letter, Plaintiffs assured Defendant several times by electronic mail that a substantive response would be forthcoming. On September 15, 2006, Plaintiffs' counsel issued a seven-page, substantive response unequivocally denying Defendant's claims. In concluding this response, Plaintiffs' counsel wrote: "We trust that this letter addresses the concerns of your client [, the Defendant,] to your satisfaction. However, if you wish to discuss these issues further, please give me a call." (Letter from Lile Deinard to Melvin Drozen 7.) The following day, Plaintiffs filed the instant action.

Defendant argues that the conclusion of Plaintiffs' letter is clear invitation to en-

---

**2.** *Windsurfing*'s second prong is satisfied if, as here, the declaratory plaintiff used in commerce the allegedly infringing mark. *See Windsurfing Intern. Inc.*, 828 F.2d at 757–58.

gage in settlement discussions, and is misleading because Plaintiffs contemporaneously filed the instant action. Defendant further argues that the delay between when Plaintiffs filed the instant action and when it informed Defendant of the same—a period of more than three months—is further evidence of Plaintiffs' procedural gamesmanship. In support of these arguments, Defendant compares the posture of the instant action to that of *AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) (finding procedural fencing when "[j]ust one day before filing its declaratory action, AmSouth's counsel sent a letter stating that [the declaratory plaintiff] was 'still considering' the [declaratory defendant's] demand and its options, and that counsel would 'be in touch in the near future concerning a written response and a possible meeting ....' "), and *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.* 16 Fed.Appx. 433, 438 (6th Cir. 2001) (holding that "[a] finding of bad faith is overwhelmingly supported in the record [when] [t]he plaintiffs misled the defendants by going along with written correspondence regarding settlement while, in fact, the plaintiffs had already filed but not served an anticipatory federal action.").

Both of these cases, however, are distinguishable from the instant action. Unlike in *AmSouth Bank*, Plaintiffs' September 15 letter plainly rejected Defendant's demands. And while Defendant argues that, as in *Zide Sport Shop*, Plaintiffs' counsel's offer to discuss the issues further via telephone is a clear invitation to engage in settlement discussions (Def.'s Reply Br. at 11), the Court disagrees. The decisive—if not dismissive—tone of Plaintiffs' letter belies Defendant's suggested interpretation.

While Defendant points to other correspondence that show that Plaintiffs are amenable to settlement, these communications were made after Plaintiffs filed and

notified Defendant of the instant action. They are, therefore, of limited value in determining whether Plaintiffs were motivated merely by procedural strategy at the time they filed the instant action. Defendant offers no support for the proposition that a properly filed declaratory action can be rendered improper for procedural fencing by the declaratory plaintiff's later willingness to enter into settlement negotiations. *Cf. AmSouth Bank*, 386 F.3d at 790 (finding procedural fencing when a declaratory plaintiff entered into settlement negotiations *before* filing its declaratory action, and as a pretext). Indeed, such a rule would discourage the extrajudicial settlement of any declaratory action—a result certainly not intended by the court in *Grand Trunk*. Accordingly, the Court finds that Plaintiffs did not file the instant action merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata ...." *Grand Trunk*, 746 F.2d at 326.

Further, the remaining *Grand Trunk* factors do not militate against exercising discretionary jurisdiction. As the instant action is almost entirely comprised of federal trademark and trade dress claims, and no parallel state action exists, the risk of friction between federal and state courts or improper encroach upon state jurisdiction is minimal. *See id.* For the same reasons, there exists no alternative remedy which is better or more effective. *See id.* Further, it is apparent that the instant action would settle the controversy and serve a useful purpose in clarifying the legal relations in issue. *See id.* The Court can readily address all issues raised in Plaintiffs' Complaint. On balance, the factors set forth in *Grand Trunk* suggest that the Court should exercise its discretionary jurisdiction over the instant action. Accordingly, Defendant's Motion to Dismiss is DENIED as to its claim that the

Court should decline to exercise its discretionary jurisdiction.

## C. Transfer of Venue

 Defendant also moves for a transfer of venue pursuant to 14 U.S.C. § 1404(a). To prevail, Defendant must bear the burden to identify an alternate forum and demonstrate that the convenience of the parties and witnesses, and the interest of justice, warrant transfer. *Moses v. Bus. Card Exp., Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991). A transfer of venue under 28 U.S.C. § 1404(a) must render the litigation more convenient as a whole; it cannot merely shift inconvenience between the parties. *See Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

Defendant's argument reveals that transfer to the Eastern District of Michigan would merely be more convenient for it, and not for both parties. Plaintiff McKee Foods Corporation's principal place of business is within the Eastern District of Tennessee. All of Plaintiffs' witnesses reside in Tennessee. While Defendant and its witnesses may be located within the Eastern District of Michigan, transfer would merely shift inconvenience between the parties.

The Court notes that Defendant does not address whether a transfer would be in the interest of justice. Further, the Defendant has not established that Plaintiffs have engaged in procedural gamesmanship that would warrant disturbing its choice of forum. Accordingly, Defendant's Motion to Dismiss is **DENIED** as to its request for a transfer of venue.

## D. Personal Jurisdiction

The record does not contain sufficient evidence to permit the Court to rule on the personal jurisdiction portion of Defendant's Motion to Dismiss at this time. United States Magistrate Judge Susan K. Lee will determine the scope and duration of discovery in aid of the personal jurisdiction portion of Defendant's motion. *See Serras v. First Tenn. Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989) (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981)). Accordingly, the Court **RESERVES RULING** on Defendant's Motion to Dismiss as to personal jurisdiction.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Court Doc. No. 16–1] is **DENIED** as to lack of subject matter jurisdiction, discretionary jurisdiction, and change of venue. The Court **RESERVES RULING** on Defendant's Motion to Dismiss for [Court Doc. No. 16–1] as to lack of personal jurisdiction. The above-captioned action remains pending before the Court.