**NARTRON CORPORATION, Plaintiff,**

v.

**QUANTUM RESEARCH GROUP, LTD., Defendant.**

No. 06–13792.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 12, 2007.

Mark D. Chuey, Robert C.J. Tuttle, Brooks & Kushman, Southfield, MI, for Plaintiff.

Laurie J. Michelson, Butzel Long, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

LAWSON, District Judge.

The defendant's motion to dismiss this patent infringement case is based on two grounds: the present lawsuit violates the prudential first-filed rule because another lawsuit previously was filed in the United States District Court for the Western District of Pennsylvania involving the same parties, the same patent, and the same issues; and the defendant is not subject to personal jurisdiction in this district because the plaintiff cannot satisfy the test for personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Resolution of these issues depends on the determination of another dispute raised by the plaintiff: whether the defendant in this case and the entity involved in the Pennsylvania litigation are the same company. The Court is satisfied that Quantum Research Group, Ltd., the defendant in this case, and QRG, Ltd., the plaintiff that has sued Nartron Corporation in Pennsylvania, are the same entity. The Court also concludes that this case ought to be dismissed without prejudice on the basis of both grounds raised by the defendant. The motion to dismiss, therefore, will be granted.

### I.

The plaintiff, Narton Corporation, is the owner of U.S. Patent No. 4,758,735 (the "'735 patent"), entitled "DC Control Touch Switch Circuit," a patent for a "capacitive touch sensing" device. Capacitive touch sensing technology is used in creating touch-sensitive interfaces for cellular telephones, digital music players, and similar devices. This technology enables a user to touch a screen, such as a liquid crystal diode display, and thereby control a function on the device such as adjusting the volume, playing a song, etc.

The plaintiff commenced this action on August 25, 2006 seeking a declaratory judgement that the defendant, Quantum Research Group, Ltd. ("Quantum") has infringed or is preparing to infringe the '735 patent. The complaint also requests damages if infringement has occurred. In support of its claim and to establish personal jurisdiction, the plaintiff alleges the following:

8. Nartron has at all times relevant to this controversy been the owner, by assignment, of U.S. Patent No. 4,758,735, for "DC Touch Control Switch Circuit," issued July 19, 1988 ("the '735 patent"). A true and correct copy of the '735 patent is attached hereto as Exhibit A.

9. The '735 patent was duly issued in compliance with law.

10. On or about April 13, 2006, a representative of Nartron brought the '735 patent to the attention [of] Mr. Harald Philipp, Chief Executive Officer of

Quantum, and notified Quantim of Nartron's apprehension that Quantum was engaged in activity directed toward infringement of the '735 patent, or making meaningful preparation for infringement.

11. Nartron has asked Quantum not to infringe the '735 patent, and to change the course of its actions directed to infringement, or meaningful preparation for infringement.

12. Quantum has refused, and is proceeding in such conduct.

13. Quantum has a website at the address: www.qprox.com.

14. Quantum describes its business on its website, www.qprox.com/about/profile.php, as follows:

Quantum Research Group develops and markets capacitive sensor ICs for switching and control applications based on its patented charge-transfer (QT) capacitive sensing technology.

15. Quantum has a sales presence in the United States, as evidenced by the following statement on its website:

With sales representation in USA, Germany, France, Italy, Australia, New Zealand, Taiwan and Southern Africa, Quantum serves a global market and has gained extensive knowledge and understanding of widely different markets and customer applications. The company's target markets comprise high volume consumer applications (including home appliances and audio/video systems), home security, medical, automotive, wireless, RFID, and industrial. *Id.*

16. Quantum is "actively seeking rep[resentative]s and distributors worldwide," including the United States. http://www/qprox.com/about/international.php.

17. Quantum's website is also interactive, inviting contact from the United States (http://www.qprox.com/about/contact.php), and daily dialogue, *e.g.*,

"Information requests are responded to daily." (http://www.qprox.com/about/request_info.php?sourcepage=/about/contact.php.)

18. Quantum's website identifies many of its customers, which include companies based in the United States. (http://www.qprox.com/about/client list.php.)

19. Accordingly, this Court's exercise of personal jurisdiction over Quantum is consistent with the Constitution and laws of the United States, under the principle of Fed.R.Civ.P. 4(k)(2).

*Id.* at ¶¶ 8–19. The parties agree that Quantum is a British corporation.

On April 13, 2006, another lawsuit was filed *against* Nartron in the United States District Court for the Western District of Pennsylvania by an entity that called itself QRG, Ltd. In that action, QRG alleged that Nartron claimed to be the owner of various patents, including the '735 patent; Nartron had a reputation of aggressively pursuing dubious patent infringement claims; Nartorn had threatened QRG with patent infringement litigation; QRG had not infringed any of Nartron's patents; Nartron was estopped from construing claims that covered any of QRG's products because of statements made by the inventor during the prosecution of the patent in the United States Patent and Trademark Office; and the patents, including the '735 patent, are invalid. QRG seeks a judgment declaring that five patents held by Nartron are invalid and, to the extent they are valid, that QRG has not infringed the patents.

In the present case before this Court, Quantum asserts that it is the same entity as QRG. It also states that it has no presence in this district, but it does have an office in Pittsburgh, Pennsylvania, where it is amenable to suit. It contends that its lawsuit filed in the Western District of Pennsylvania was filed first and it deals

with the same claims of infringement of the same patent involved in this case; therefore this case should be dismissed. Quantum also alleges that this Court has no personal jurisdiction over it. Nartron vigorously disputes the identity of QRG. In fact, it has file a motion to dismiss the Pennsylvania case contending that: (1) QRG, Ltd. is a basically a sham entity and that, as a consequence, it cannot hold title to any patent rights; and (2) apart from the first issue, there is an insufficient controversy between the parties to invoke the court's jurisdiction to issue a declaratory judgment (i.e., Nartron never threatened a patent infringement action and Quantum had no legitimate reason to fear such action). Nartron contends here that because the Pennsylvania case has no future, it ought not serve as a basis for a first-to-file dismissal.

To prove that QRG, Ltd. is a sham entity, Nartron first points to the deposition testimony of Nartron CEO, Norman Rautiola, whose deposition is not furnished as an exhibit, but an excerpt is quoted in the plaintiff's brief. Rautiola stated that he had never heard of QRG before the Pennsylvania litigation; he had simply heard of Quantum. Second, in response to a sworn statement made by Harald Philipp, the defendant's CEO, that QRG, Ltd. is a "United Kingdom corporation," the plaintiff has submitted a print-out from a U.K. governmental website that explains that there are four types of companies recognized under U.K. law, and that allegedly shows that such companies are either English or Scottish, but there is no such thing as a "United Kingdom corporation." Third, despite the fact that the Pennsylvania complaint states that QRG, Ltd. has a U.S. office in Pittsburgh, the plaintiff performed an online records search with the Pennsylvania Department of State and found no records corresponding to the name "QRG." Fourth, the plaintiff has proffered five trademark applications exe-

cuted by Gene A. Tabachnick, Esq., the same attorney who signed the Pennsylvania complaint on behalf of QRG., Ltd. The applications show that the owner/applicant of the trademark is "Quantum Research Group Limited," not "QRG, Ltd." These applications were submitted roughly two months after the Pennsylvania action was filed. Fifth, the plaintiff observes that Quantum's website shows that it is registered to "Quantum Research Group, Ltd.," not QRG. Lastly, the plaintiff has submitted selected court records from a Western District of Michigan case, *Intier Automotive Closures, Inc. v. Quantum Research Group, Ltd.*, 04–00740, in which the defendant is named as "Quantum Research Group, Ltd." and the defendant refers to itself as "Quantum," not "QRG, Ltd."

The defendant has taken the position that QRG, Ltd. and Quantum Research Group, Ltd., refer to the same entity. It explains that QRG, Ltd. is the company's formal name, and Quantum Research Group, Ltd. is the name more commonly used in the trade. By way of support, the defendant has submitted a copy of the front page of its website, which bears the copyright legend, "Copyright © 2005 QRG, Ltd." Further, the defendant has submitted the sworn affidavit of Harald Philipp, CEO of the defendant, in which he states:

1. I am the Managing Director of QRG, Ltd....

2. QRG, Ltd. sometimes does business under the name of the defendant in this action, Quantum Research Group. However, Quantum Research Group, Ltd. is not a legal entity. QRG, Ltd. is a United Kingdom limited company.

Reply Br., Ex 1, Aff. of Philipp. at ¶¶ 1–2. The defendant has submitted another printout from its website, a legal notices section, which refers to the company's liability and uses the name "QRG" over 30 times. Further, the defendant has includ-

ed a letter sent by Mr. Philipp to Nartron in response to Nartron's threats of an infringement suit. The letterhead reads, "Quantum Research Group Ltd.," but lists the name "QRG, Ltd." at the bottom of the page. Reply Br., Ex. E, Letter from Philipp to Nartron. Finally, the defendant refers to a draft of a covenant not to sue between Nartron and the defendant that was never formalized. The draft contains edits made by the defendant to replace the name "Quantum Research Group, Ltd." with the company's formal name, "QRG, Ltd." Reply Brf., Ex. F, Draft Covenant Not to Sue.

In response to the plaintiff's allegation that the Pennsylvania declaratory judgment action will likely be dismissed for lack of subject matter jurisdiction, the defendant contends that it sufficiently pleaded a live controversy and also submits evidence tending to show that there is such a controversy. For instance, the defendant has attached a letter sent by Norman Rautiola to Harald Philipp on November 27, 2001 concerning the five patents at issue in the Pennsylvania action, including the '735 patent. The letter reads as follows:

Re: US patents 4,731,548; *4,758,735;* 4,831,279; 5,087,825; 5,796,183

Dear Mr. Phillip:

We have recently been made aware of your family of "capacitive sensing" products, in some cases as referred to QProx, QTouch, QLevel.

We invite your attention to the above listed patents that should be of significant interest to you.

We may be interested in discussing the possibility of licensing Quantum.

We solicit your timely attention to the Nartron patented technology and look forward to hearing from your soon.

Sincerely,

Norman Rautiola, CEO

Reply Brf., Ex. A, Letter from Rautiola to Phillip (emphasis added). On January 2, 2002, Philipp responded to Rautiola, stating as follows:

Dear Mr. Rautiola,

I am in receipt of your letter dated 27 November 2001 concerning patent related issues.

We have reviewed the patent numbers you submitted but we do not see any infringement issues. The only similarity seems to be that the cited patents are also capacitance sensors. But we will keep an open mind if your staff can show us specifically how Nartron's patents might be infringed by our technologies.

· · ·

Best Regards,

Hal Philipp

Reply Brf., Ex. E, Response Letter from Philipp to Rautiola. On April 16, 2002, Rautiola sent a letter back to Philipp, which reads as follows:

Mr. Phillipp:

Re: Possible infringement

We disagree with your explanation of January 2nd and insist that you review again our patented claims.

For example page 5 of your Form QProx (enclosed), obviously a ground or Vcc makes your chips useful. This device is obviously an infringement of our patented technology.

We intend to pursue this claim of infringement and suggest that you immediately contact our attorney Robert Tuttle, at 248 358 4400. We will not simply stand by with your assertion that your chips operate "on principles other than those cited in your patents," since that assertion is not true.

Norman Rautiola, CEO

Reply Brf., Ex. B, Follow-up Letter from Rautiola to Phillipp.

In the meantime, the district court in the Western District of Pennsylvania transferred that action to the Middle District of Pennsylvania, where it is presently pending. After the motion papers were filed in this case, QRG filed a motion in the Pennsylvania case to clarify the caption to read "QRG, Ltd., a/k/a Quantum Research Group, Ltd., Plaintiff," on the ground that both names describe one and the same entity. That motion apparently is still pending as well.

## II.

As noted above, one of the key issues underlying the plaintiff's opposition to the motion to dismiss is the plaintiff's argument that QRG, Ltd. is a sham entity or somehow distinct from Quantum Research Group, Ltd. However, the Court is convinced that both names refer to the same entity. The defendant has submitted persuasive evidence in the form of the sworn affidavit of CEO Harald Philipp, wherein he states that the QRG, Ltd. is the company's formal name, while Quantum Research Group, Ltd. is simply another moniker for the company commonly used in the trade. This notion is bolstered by the fact that every page on the defendant's website, although showing the name "Quantum Research Group" as a sort of masthead, contains a copyright legend in the lower right-hand corner that reads, "Copyright © 2005 QRG Ltd." The correspondence between Phillip and Nartorn's CEO deal with the same patents and essentially the same controversy that is raised in both the lawsuits. QRG has formally acknowledged the unified identity in its motion filed in the Pennsylvania case. The plaintiff has not presented any credible evidence to rebut the defendant's explanation. The Court finds that the two names refer to the same entity.

Having resolved the issue of the names of the parties in this case and the Pennsylvania case, the Court will turn to the specific grounds for dismissal asserted by the defendant.

## A.

The "first-filed" or "first-to-file" rule is "a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed. Appx. 433, 437 (6th Cir.2001) (internal quotation marks omitted). This Court has the discretion to dispense with the first-filed rule where equity so demands. *Ibid.* Factors that weigh against application of the rule include "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Ibid.* In other words, it is "not a strict rule" and may give way in the face of compelling circumstances or to significant policy considerations. *See AmSouth Bank v. Dale*, 386 F.3d 763, 791 n. 8 (6th Cir.2004). However, " 'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed.Cir.1989) (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969)).

Factors to be considered in the application of the rule are "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Plating Resources, Inc. v. UTI Corp.*, 47 F.Supp.2d 899, 903–04 (N.D.Ohio 1999) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625–26 (9th Cir.1991)).

There is no question that the Pennsylvania action was filed first. In addition, based on the Court's earlier finding, the parties to the two actions are identical, swapping only the honor of the title "plaintiff" in the respective cases. As to the similarity of the issues, both cases involve requests for declaratory relief. Although the Pennsylvania action is more comprehensive in that it involves more patents, both actions call into question the '735 patent and Nartron's rights thereunder. In fact, Nartorn's counsel at oral argument acknowledged that if QRG and Quantum are the same entity, then Nartorn's claim here should be brought as a compulsory counter-claim in the Pennsylvania case, should that action survive the motion to dismiss. More to the point, the Federal Circuit has held:

> When the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.... The purpose of "prevent[ing] multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters," *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962), is as valid for declaratory action as any other.

*Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 938 (Fed.Cir.1993), *overruled on other grounds, Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

 Although this Court does not presume to pre-empt the district court in the Middle District of Pennsylvania or predict the outcome of the motion to dismiss, it appears that the controversies in both cases are real and nearly identical. In the Pennsylvania action, Quantum seeks, *inter alia,* a declaratory judgment establishing that its technology does not infringe Nartron's '735 patent or, alternatively, that the '735 patent is unenforceable. In the case before this Court, Nartron seeks a declaratory judgment and damages on its claim that Quantum has infringed or is preparing to infringe the '735 patent. The two cases will cover the same ground and hinge on the same legal and factual determinations. The letters between Rautiola of Nartron and Philipp of Quantum evince a live dispute over whether Quantum was infringing the '735 patent "of sufficient immediacy and reality" to warrant declaratory relief. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

> Determination of whether there is an actual controversy in patent actions generally entails the two part inquiry of (1) whether the declaratory plaintiff has acted in a way that the patentee asserts infringes the patent, or is preparing to act in such a way; and (2) whether the patentee has created, in the declaratory plaintiff, a reasonable apprehension of suit for infringement. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735–36, 6 USPQ2d 1685, 1688–89 (Fed.Cir.1988). When the patentee has explicitly charged that a current activity of the declaratory plaintiff is an infringement, "certainty has rendered apprehension irrelevant, and one need say no more." *Id.* at 736, 846 F.2d 731, 6 USPQ2d at 1689.

*Genentech,* 998 F.2d at 936–37. Each of these elements appears to be present in the Pennsylvania action. For both comity's and efficiency's sake, the first-filed rule dictates that this Court dismiss the later-filed case in preference of the Pennsylvania action.

## B.

■ Quantum also argues want of personal jurisdiction. In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002). Because this Court is relying only on the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing of jurisdiction." *Ibid.* In the absence of an evidentiary hearing, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Ibid.* The Court views the facts in the light most favorable to the nonmoving party. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Nartron does not contend that that Quantum has sufficient contacts with this district to permit the exercise of general or limited personal jurisdiction. Rather, Nartron has attempted to invoke this Court's personal jurisdiction over the defendant by way of Federal Rule of Civil Procedure 4(k)(2), which states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or failing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is *not* subject to the jurisdiction of the courts of general jurisdiction of *any* state.

Fed.R.Civ.P. 4(k)(2) (emphasis added).

■ In *See, Inc. v. Imago Eyewear Pty*, 167 Fed.Appx. 518 (6th Cir.2006), the Sixth Circuit explained that for a Court to have personal jurisdiction under this Rule, the following elements must be established: " '(1) the plaintiff's claims must be based on federal law; (2) no state court could

exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution.' " *Id.* at 521 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000)).

Quantum insists that Rule 4(k)(2) does not apply because it can be sued in the courts of Pennsylvania. Indeed, Pennsylvania's long-arm statute authorizes the exercise of personal jurisdiction to the constitutional limits of the Due Process Clause of the Fourteenth Amendment. 42 Pa. Cons.Stat. Ann. § 5322(b) (1981); *see also Nissley v. JLG Indus., Inc.*, 306 Pa.Super. 557, 452 A.2d 865, 866 (1982); *Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992).

■ Based on the present record, it is readily apparent that the courts of Pennsylvania are able to assert jurisdiction over the defendant. The defendant's website contains a page entitled "contact details." *See* http://www.qprox.com/about/contact. php. The page lists the defendant's main office as being in the United Kingdom and its U.S. office as located at "651 Holiday Drive Bldg. 5/300, Pittsburgh, PA 15220." *Ibid.* This address matches the address to which Rautiola sent Philipp the above-quoted letters, and from where Rautiola received Philipp's replies. Moreover, in the Pennsylvania action, the defendant stated in its complaint that it is a British company with its U.S. offices in Pittsburgh. As a company transacting business in Pennsylvania and with offices there, the defendant is plainly subject to the exercise of personal jurisdiction by Pennsylvania courts. Moreover, because it brought its action in the federal court in Pennsylvania, QRG (Quantum) consented to being sued in that district well before

the present action was filed here by Nartron. Therefore, this Court has no personal jurisdiction over the defendant pursuant to Rule 4(k)(2) because the plaintiff has failed to establish that the defendant "is not subject to the courts of general jurisdiction of *any* state." Fed.R.Civ.P. 4(k)(2) (emphasis added).

### III.

The Court finds that QRG, Ltd. and Quantum Research Group, Ltd. are the same entity. A prior lawsuit involving the same claims between the same parties was filed in a federal court of equal rank, and the matter should proceed there. Moreover, this Court does not have personal jurisdiction over the defendant on the basis of Federal Rule of Civil Procedure 4(k)(2), which is the only basis upon which the plaintiff has asserted jurisdiction over the defendant.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt # 6] is **GRANTED,** and the complaint is **DISMISSED WITHOUT PREJUDICE.**