**GLASSMAN, EDWARDS, WADE & WYATT, P.C. and Audet & Partners, LLP, Plaintiffs,**

v.

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ, LLP; Kaplan, Fox & Kilsheimer, LLP; and Preti, Flaherty, Beliveau & Pachios, LLP, Defendants.**

No. 08–2336 D/P.

United States District Court,
W.D. Tennessee,
Western Division.

March 10, 2009.

John D. Richardson, Teresa A. Boyd, The Richardson Law Firm, Memphis, TN, for Plaintiffs.

Paul Kent Bramlett, Bramlett Law Offices, Nashville, TN, Thomas H. Burt, Wolf Haldenstein Alder Freeman & Herz LLP, New York, NY, for Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(6), 12(b)(2), AND 12(b)(7) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

BERNICE BOUIE DONALD, District Judge.

Before the Court is Defendants' Motion to Dismiss Pursuant to Rules 12(b)(6),

12(b)(2), and 12(b)(7) of the Federal Rules of Civil Procedure, filed under seal on June 17, 2008. (D.E. 10.) Plaintiffs filed a response in opposition on July 17, 2008, and Defendants filed a reply on September 8, 2008. The parties filed supplemental declarations relating to personal jurisdiction on February 13, 2009.[1]

For the following reasons, the Court DENIES Defendants' Motion to Dismiss.

## I. BACKGROUND FACTS [2]

Plaintiffs Glassman, Edwards, Wade & Wyatt, P.C. ("Glassman firm") and Audet & Partners, LLP ("Audet firm") are law firms located in Memphis, Tennessee and San Francisco, California, respectively.[3] (Compl. ¶¶ 1–2.) Defendants Wolf, Haldenstein, Adler, Freeman & Herz, LLP ("Wolf firm") and Kaplan, Fox & Kilsheimer, LLP ("Kaplan firm") are New York-based law firms, and defendant Preti, Flaherty, Beliveau & Pachios, LLP ("Preti firm") is a law firm located in Portland, Maine. (Compl. ¶¶ 3–5.)

According to the complaint, on or before April 7, 2006, Mary Jane Fait, a partner in the Wolf firm's Chicago, Illinois office, approached B.J. Wade ("Wade"), an attorney with the Glassman firm, and William M. Audet ("Audet") of the Audet firm, to form a "joint venture" to serve as co-counsel for the plaintiffs in anti-trust lawsuits filed in the United States District Court for the Western District of Tennessee, styled *PoolPak Technologies Corp. v. Outokumpu Oyj et al.* (Civ. No. 2:06–cv–02207–BBD–tmp, filed on April 7, 2006) and *United Coolair Corp. v. Outokumpu Oyj et al.* (Civ. No. 2:06–cv–02211–SHM–tmp, filed on April 11, 2006). (Compl. ¶ 8.) The purpose of the joint venture was to undertake the prosecution of the above-styled actions by contributing equity in the form of attorneys' fees, expenses or costs advanced in the prosecution of these actions, to control and litigate the direction of these two actions, and to equitably share any attorney's fees derived from successful prosecution of these two actions by the three firms. (Compl. ¶ 9.) As a result of the joint venture between Plaintiffs and the Wolf firm, these parties allegedly had a fiduciary duty to each other for acts taken in furtherance of the joint venture. (Compl. ¶ 10.)

Pursuant to the agreement, the parties commenced prosecution of the litigation in the above-referenced complaints. Thereafter, on April 19, 2006, an additional action was filed relating to the two actions listed above, styled *Twinco Supply Corporation v. Outokumpu Oyj et al.* (Civ. No. 2:06–cv–02225–BBD–tmp). Plaintiffs and the Wolf firm continued to prosecute all three actions as a joint venture, and subsequently filed a motion to consolidate the three related actions and for appointment of interim lead and liaison counsel. (Compl. ¶ 11.) On May 25, 2006, United States Magistrate Judge Tu M. Pham entered a Report and Recommendation on Plaintiffs' motion, recommending that the Wolf, Audet, Glassman, and Preti firms be appointed as interim co-lead counsel in the consolidated action, styled *In re ACR Copper Tubing Litigation* (Master File no. 06–1107–D/P) ("ACR Litigation"). The Magistrate Judge further recommended that the Paul Bramlett Law Offices ("Bramlett firm") be appointed as interim liaison counsel. (Compl. ¶ 12.)

---

**1.** In addition to the parties' briefs and supplemental declarations, the court has also reviewed the recording of the arguments of counsel at the February 4, 2009, oral argument on this motion.

**2.** The facts are taken from Plaintiffs' Complaint (D.E. 1) and are presumed to be true only for the purpose of this motion.

**3.** The Audet firm was formerly known as Alexander, Hawes & Audet.

After May 25, 2006, and in furtherance of the joint venture agreement, Plaintiffs drafted memoranda, motions, and proposed orders; drafted, edited, and filed various court documents; and participated in numerous telephone conferences with the law firm defendants in the present case and with counsel for the ACR defendants in the ACR Litigation. In addition, Plaintiffs expended considerable out of pocket costs and assisted with common benefit costs advanced on behalf of the clients. All of the filings for the clients in the underlying actions were handled by the Glassman firm, and all hearings convened in the case were attended by at least one of the Plaintiffs in this case. (Compl. ¶ 13.)

On July 26, 2007, this Court entered an order granting the ACR defendants' Motions to Dismiss filed in the ACR Litigation, based on lack of subject matter jurisdiction. (Compl. ¶ 14.) Pursuant to the joint venture agreement, Plaintiffs and Defendants filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit. The Glassman firm was listed as counsel for Plaintiffs in the action on appeal. (Compl. ¶ 15.) In December of 2007, Fait participated in a telephone call with attorneys Audet and Wade, at which time she stated that she had asked attorneys for the ACR plaintiffs to dismiss their cases on appeal. Fait further stated to Audet and Wade that if these attorneys dismissed their actions, it was her intent not to pay the Glassman and Audet firms

for the services rendered. (Compl. ¶ 16.) Thereafter, in or around December of 2007, Fait, on behalf of the Wolf firm, participated in a mediation session without notice to the Glassman and Audet firms, and purported to settle the case on behalf of all the plaintiffs in the ACR Litigation. (Compl. ¶ 17.) Fait's purpose in mediating the case on appeal without notice to the Glassman and Audet firms was to deprive these firms of attorney's fees for legal services rendered in the ACR Litigation.[4] (Compl. ¶ 18.) After Plaintiffs received notice that Fait executed Orders of Dismissal in the actions pending on appeal in the Sixth Circuit, Plaintiffs filed a lien on the recovery on March 17, 2008, and filed an Amended Notice of Lien on March 24, 2008. (Compl. ¶¶ 20–21.)

On March 28, 2008, Plaintiffs filed the present lawsuit against the Wolf, Kaplan, and Preti firms. Counts I, II, and III assert claims only against the Wolf firm, whereas Counts IV and V assert claims against all three defendants. In Count I of the complaint, Plaintiffs allege that the Wolf firm, by settling the ACR Litigation on appeal without notice to the Plaintiffs and without compensating Plaintiffs for their legal services, breached its fiduciary relationship with the Plaintiffs. Count II seeks the imposition of a constructive trust on the non-client portion of the settlement proceeds, based on the Wolf firm's breach of fiduciary duty.[5] In Count III, Plaintiffs allege that the Wolf firm breached the

---

**4.** The Kaplan and Preti firms each represented named plaintiffs in the ACR Litigation. These firms and their clients entered in separate settlement agreements with the ACR defendants while the case was on appeal. (Defs.' Mem. in Support of Mot. to Dismiss at 3.)

**5.** At the time of the filing of Defendant's Motion to Dismiss, the defendants in the ACR Litigation were holding the entire amount of the settlement proceeds in a Citibank account,

pending resolution of the present litigation. However, at the February 4, 2009 oral argument, Defendants informed the court that the ACR defendants have since released the client portion of the settlement proceeds to the plaintiffs in the ACR Litigation. Therefore, only the attorney's fees portion of the settlement proceeds are currently being held by the ACR defendants in the Citibank account. In this litigation, Plaintiffs do not seek to recover any portion of the settlement proceeds already disbursed to the ACR plaintiffs.

implied covenant of good faith and fair dealing, based on the oral agreement between Plaintiffs and the Wolf firm.

Count IV seeks a declaratory judgment against all three defendants. Count V alleges that in the event the Court determines that neither a joint venture nor an oral agreement existed, Plaintiffs should be entitled to a recovery from the Defendants in *quantum meruit* for their legal services rendered and expenses incurred in the prosecution of the ACR Litigation.

In the present motion, Defendants seek to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6), 12(b)(2), and 12(b)(7). First, under Rule 12(b)(6), Defendants contend that the complaint fails to state a claim against the Wolf firm because the alleged joint venture between Plaintiffs and the Wolf firm violates Rule 1.5(e) of the Tennessee Rules of Professional Conduct; Plaintiffs fail to allege the existence of a contract; and Plaintiffs are not entitled to recover under the theory of *quantum meruit* because they "provided nothing of value in this case" and did not participate in the mediation sessions that resulted in the settlements on appeal. Second, Defendants contend that the complaint must be dismissed because Plaintiffs failed to join the ACR defendants and attorney Bramlett as required under Fed. R.Civ.P. 19. Third, Defendants argue that this Court lacks personal jurisdiction over them. Fourth, Defendants claim that the complaint should be dismissed because this action violates the "first to file" doctrine.

## II. LEGAL ANALYSIS

### A. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).

A defendant may bring a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). This motion only tests whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436

(6th Cir.1988). Essentially, it allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To determine whether a motion to dismiss should be granted, the Court must examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and it must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). While a complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)(citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)); *see also Scheid*, 859 F.2d at 436–37. A complaint must have a factual foundation, and the mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. *Twombly*, 127 S.Ct. at 1968 (internal quotation marks and brackets omitted).

In reviewing the complaint, the Court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Neitzke*, 490 U.S. at 326–27, 109 S.Ct. 1827 ("Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations."); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th

Cir.1983). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). However, only well-pleaded facts must be taken as true, and the Court need not accept legal conclusions or unwarranted factual inferences. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir.1998). When a complaint does adequately state a claim, it may not be dismissed based on the Court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969.

Defendants assert that the case should be dismissed under Rule 12(b)(6) because the alleged joint venture agreement violates Rule 1.5(e) of the Tennessee Rules of Professional Conduct. Rule 1.5(e) provides as follows:

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
>
> (1) the division is in proportion to the services performed by each lawyer or, by written consent of the client, each lawyer assumes joint responsibility for the representation; and
>
> (2) the client is advised of and does not object to the participation of all the lawyers involved; and
>
> (3) the total fee is reasonable.

Tenn. R. Prof. Conduct 1.5(e). Defendants, relying on *Estate of Carpenter*, 1999 WL 486826, 1999 Tenn.App. LEXIS 456 (Tenn.Ct.App. July 13, 1999), argue that "joint venture arrangements between law firms violate the rules of ethics and public policy, and are thus unenforceable." (Defs.' Mem. in Support of Mot. to Dismiss at 6). *Carpenter* does not, however, stand for any such proposition. Rather, in *Carpenter* the appellate court ruled that "[c]alling ... a situation a 'joint venture' does not take the case out of the province

of [Disciplinary Rule 2–107]" and that a "fee may not be divided between the attorneys except in proportion to the services performed and responsibility assumed by each...." *Id.* at *3, 1999 Tenn.App. LEXIS 456 at *5–6. The court stated that although an attorney may not receive a fee that is "clearly excessive," the fee charged to the client in that case was not clearly excessive. *Id.* at *3–4, 1999 Tenn.App. LEXIS 456 at *9. The court concluded that the trial court did not err in allocating fees to the attorneys in proportion to the services performed and responsibility assumed by each attorney. *Id.* Simply put, *Carpenter* does not support Defendants' arguments and does not support dismissal of the complaint.

■ Here, the complaint sufficiently alleges an agreement between Plaintiffs and the Wolf firm to "equitably share any attorneys fees derived from successful prosecution of these two actions by the three firms." (Compl. ¶ 9.) The complaint asserts that Plaintiffs provided valuable legal services in furtherance of the joint venture, and seeks a recovery from the Defendants "for [Plaintiffs'] legal services rendered and expenses incurred in the prosecution of the underlying actions." (Compl. ¶ 33.) Thus, on its face, the complaint sufficiently states a claim for which relief may be granted.

■ Defendants also contend that the fee sharing agreement was not approved in writing by their clients (the ACR plaintiffs), as required by Rule 1.5(e), and that "the Complaint makes it impossible to determine what they are seeking and to assess whether it is proportional to the work and responsibility that [Plaintiffs'] bore." (Defs.' Mem. in Support of Mot. to Dismiss at 6.) With respect to the first point, Rule 1.5(e) does not require that the client consent to the fee division in writing so long as the division is in proportion to the ser-

vices performed by each lawyer. The complaint does not contain any allegations that would suggest that Plaintiffs seek a division of fees that are not in proportion to services performed. Quite to the contrary, Plaintiffs allege that "Defendant has failed and refused to provide Plaintiffs with an accounting of the time and expenses expended in the prosecution of this cause[.]" (Compl. § 22.) Moreover, it is undisputed that the ACR plaintiffs have already received their portion of the settlement proceeds, and that the only remaining dispute is the disbursement of the remaining attorney's fees portion of the settlement proceeds among the law firms. Thus, as in *Carpenter*, there is no challenge to the reasonableness of the fees charged to the clients. As such, the concern addressed in Rule 1.5(e) regarding unreasonable fees charged to a client is not at issue in the present case, and therefore a lack of consent from the ACR plaintiffs to the fee sharing agreement would not prohibit an attorney from recovering his or her fees against another attorney under that agreement. With respect to the second argument, the uncertainty of the exact portion of the fees claimed by Plaintiffs goes to the remedy and is simply not a basis to dismiss a claim under Rule 12(b)(6).[6]

Finally, the Defendants assert that the Plaintiffs provided "nothing of value" to the litigation for the purposes of a *quantum meruit* claim. Recovery under the theory of *quantum meruit* is based on a "legally implied promise to pay a reasonable amount of goods and services received," and therefore the amount is limited to the actual value of the services received. *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531 (Tenn.Ct.App.2002) (quoting *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn.Ct.App.1995)). Although it is undisputed that Plaintiffs did not participate in the mediation that directly resulted in the settlement, they allege in the complaint that they provided many services to the ACR plaintiffs and their counsel, including but not limited to acting as lead and liaison counsel; drafting memoranda, motions, and proposed orders; drafting, editing, and filing numerous court documents; participating in numerous telephone conferences; and appearing at every hearing in the underlying ACR Litigation. They also claim that they did not "contribute" to the settlement because Defendants secretly engaged in settlement negotiations with the ACR defendants without notifying Plaintiffs. The Court finds that these allegations sufficiently plead a claim for recovery under the theory of *quantum meruit*.

For these reasons, the motion to dismiss for failure to state a claim under Rule 12(b)(6) is denied.

## B. Motion to Dismiss for Failure to Join Proper Parties Under Rule 12(b)(7).

Defendants assert that the case should be dismissed because Plaintiffs have failed to join all the required parties as required under Fed.R.Civ.P. 19. Specifically, De-

---

**6.** Because the Court concludes that *Carpenter* does not prohibit attorneys from entering into joint venture agreements such as the agreement in the case at bar, the Court likewise rejects Defendants' argument that Count III should be dismissed (again based on *Carpenter*) because Plaintiffs fail to allege an enforceable contractual relationship between the parties. In any event, Plaintiffs in fact allege in Count III that the parties had an "oral agreement" to share the attorney's fees. *See Humphrey v. Tomkats, Inc.*, No. M2005–867, 2006 WL 2285806, at *5 (Tenn.Ct.App. Jan. 29, 2007)(finding an enforceable oral agreement where there was (1) mutual assent to the contract's terms, and (2) the terms were sufficiently definite to be enforceable).

fendants claim that Plaintiffs have failed to join the ACR defendants, on the grounds that those defendants are the ones that possess the settlement proceeds, and that they have failed to join attorney Bramlett, who served as interim liaison counsel in the ACR Litigation and is also entitled to receive a portion of the settlement proceeds.

Federal Rule of Civil Procedure 19 provides as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party.

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order.

If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(b) When Joinder is Not Feasible.

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19. In applying this rule, the Court must first determine if the party is a necessary party under the terms of Rule 19(a). A necessary party is one whose absence would impair or impede the party's ability to protect its interests in the litigation. Second, if the party is necessary, the Court must determine whether joinder is feasible under the specific circumstances of the case. Third, if joinder is not feasible, the Court must weigh the factors in Rule 19(b) to determine whether it would be equitable to go forward with the suit in the absence of the necessary party, or whether the suit must be dismissed for nonjoinder. *American Express Travel Related Services, Co., Inc. v. Bank One–Dearborn, N.A.,* 195 Fed.Appx. 458, 460 (6th Cir.2006)(citing Fed.R.Civ.P. 19; *Hooper v. Wolfe,* 396 F.3d 744, 747 (6th Cir.2005); *Glancy v. Taubman Ctrs., Inc.,* 373 F.3d 656, 666 (6th Cir.2004)).

■ The Court finds that the ACR defendants are not necessary parties under the first prong of the Rule 19 analysis.

They have already paid the ACR plaintiffs the money due to them under the terms of the settlement, and are merely holding the attorney's fees portion of the settlement proceeds in a bank account until the attorney's fees dispute among the law firms is resolved. The ACR defendants have no apparent interest in the outcome of this case, and thus the absence of the ACR defendants would not impair or impede their ability to protect theirs interests in the litigation. Therefore, the ACR defendants need not be joined as parties under Rule 19.

■ With respect to Bramlett, it is undisputed that he has an interest in the outcome of this lawsuit. He has filed an affidavit in which he states that under the terms of the settlement agreement, he is entitled to a share of the settlement proceeds.[7] Therefore, any judgment that affects the fees in dispute will also affect Bramlett's interest. Additionally, because Bramlett shares Tennessee citizenship with the Glassman firm, his joinder would defeat diversity jurisdiction.

■ "For a party to be 'necessary' under [Rule 19], the court must determine that the party's absence would impair or impede the party's ability to protect its interest in the litigation." *American Express*, 195 Fed.Appx. at 460. In the present case, although Bramlett is not a party to the litigation, he is intimately involved in the litigation through his role as lead counsel for the Defendants. Additionally, Bramlett's interest is virtually identical to the interests of the Defendants, because they all have a financial interest in the distribution of attorney's fees according to the terms of the settlement agreement,

and in particular, an interest in not sharing those proceeds with Plaintiffs.

■ Courts have found that where an absent party's interests are virtually identical to those of an existing party in the litigation and the absent party's interests will be adequately represented by the existing party, the absent party is not "necessary" and need not be joined under Rule 19(a). *See American Express*, 195 Fed. Appx. at 461 ("In the case at hand, Plus's assumption of FRBC's defense means that it will undoubtedly make the arguments that benefit its own interests, as well as those of FRBC.... FRBC has not made any showing that Plus would add any additional or necessary element to the proceedings as a party that do not already exist through its defense of FRBC. Thus, Plus's interests are adequately represented by FRBC, and Plus would not be disadvantaged by not being joined as a party."); *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir.1999) ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."); *North Shore Gas Company v. Salomon, Inc.*, 152 F.3d 642, 648–49 (7th Cir.1998) (holding that, where a corporation assumed the cost of representation for its wholly-owned subsidiary, the two companies' interests, motives, and ability to defend were "virtually identical" and thus the suit need not be dismissed for failure to join the corporation); *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1429–30 (8th Cir.1994) (concluding that absent party's ability to protect its interest was not impaired where interests were

---

**7.** Bramlett, along with the Wolf, Kaplan, and Preti firms, are plaintiffs in a lawsuit filed against the Glassman and Audet firms in New York state court. In that litigation, the plaintiffs allege that the Glassman and Audet firms have intentionally interfered with the settlement. In addition, the Glassman and Audet firms have recently filed a separate action in Tennessee state court against Bramlett based on his participation in the settlement of the ACR Litigation.

adequately represented by existing party); *Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 135–36 (1st Cir.1989) (holding that a corporation and its wholly-owned subsidiary's "virtually identical interests" permitted the corporation to adequately represent the subsidiary, and that, therefore, the subsidiary was not a necessary party). Similarly, the interests of Bramlett and Defendants are virtually identical (if not completely identical), and there is nothing to suggest that Bramlett's interests will not be adequately represented by Defendants. Indeed, Defendants' selection of Bramlett to be their lead counsel in this case and his willingness to represent the three firms strongly suggest that his interests are aligned with those of his law firm clients. Therefore, the Court concludes that Bramlett is not a necessary party under Rule 19(a), and need not be joined as a party in the present litigation.[8]

### C. Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2).

■■■■ Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing jurisdiction. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons*, 289 F.3d

865, 871 (6th Cir.2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002)). A prima facie showing of jurisdiction may be established based upon the plaintiff's presentation of specific facts, by affidavit or otherwise. *Theunissen*, 935 F.2d at 1458. In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird*, 289 F.3d at 871. This requirement, however, does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir.1997).

■■■ In diversity actions such as the case at bar, a federal court applies the law of the forum state in which it sits to determine whether personal jurisdiction is appropriate. The court may maintain jurisdiction over a non-resident defendant only in accordance with the forum state's long-arm statute and the limitations of the Due Process Clause of the United States Constitution. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994); *Proctor & Gamble Cellulose Co. v. Viskoza–Loznica*, 33 F.Supp.2d 644, 660 (W.D.Tenn.1998). In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause. *See* Tenn.Code

---

**8.** The court notes that in the pending New York action, the Glassman and Audet firms removed the case to the United States District Court for the Southern District of New York. The federal court, however, later remanded the action back to state court. In so ruling, the court rejected the Glassman and Audet firms' argument that Bramlett was fraudulently joined as a plaintiff for the purpose of defeating diversity jurisdiction. That ruling is not inconsistent with this court's conclusion that Bramlett is not a necessary party under Rule 19(a), as the standard for a defendant to

prove fraudulent joinder is vastly different from the court's analysis under Rule 19(a). As the district court in New York explained, "a court will overlook a non-diverse party for purposes of diversity jurisdiction if the defendant 'demonstrate[s] by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse [party] in state court." (Defs.' Notice of Filing of Decision of District Judge Koeltl, Ex. A.)

Ann. § 20–2–214(a)(6) (2004). Therefore, the court need only determine whether the assertion of personal jurisdiction over the Defendants would violate the Due Process Clause.

Consistent with the Due Process Clause, courts can exercise personal jurisdiction over a defendant "so long as that defendant has 'certain minimum contacts' with the forum state such that the exercise of personal jurisdiction 'does not offend traditional notations of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction may be either specific or general, depending on the nature of the defendant's contacts with the forum state. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992).

General jurisdiction arises when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989). Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.2000). The plaintiff must establish that (1) the defendant purposefully availed himself of the privilege of acting in the forum state or intentionally caused a consequence in the forum state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Id.; see also Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir.2001); *Aristech Chem. Inter. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir.1998); *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). Purposeful availment is the most important criterion. *See Kerry Steel*, 106 F.3d at 150. The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. 559).

The court finds that it has specific personal jurisdiction over each of the Defendants. First, Defendants purposefully availed themselves of the privilege of acting in Tennessee by prosecuting the protracted ACR Litigation in this state. All three of the Defendants appeared as counsel in ACR Litigation, including appearing as counsel on the Third Consolidated Amended Class Action Complaint. Mary Fait (on behalf of the Wolf firm) and Greg Hansel (on behalf of the Preti firm) submitted affidavits in support of their motion to be appointed as interim co-lead counsel in the ACR Litigation, and Magistrate Judge Pham recommended that both firms be appointed interim co-lead counsel. In Fait's affidavit, she highlighted the fact that her firm was also appointed as co-lead class counsel in another class action case filed in the Western District of Tennessee, styled *American Copper & Brass, Inc. v. Boliden AB* (Case No. 04–2771–D/V). In

addition, all three firms appeared as counsel on the 119–page document filed in opposition to the ACR defendants' motion to dismiss, and all three firms joined in the notice of appeal filed in this district. All three firms represented at least one of the named plaintiffs in the ACR Litigation, litigated the cases in this forum on behalf of their clients, and later entered into settlement agreements with the ACR defendants that resulted in dismissal of the ACR Litigation on appeal. Under these circumstances, Defendants have met the purposeful availment requirement. *See Rusakiewicz v. Lowe,* No. 07–4289, 2009 WL 448185, at *3–4 (10th Cir.2009) (holding that court had personal jurisdiction over corporate officers who supported decision to file defamation lawsuit and authorized payment of corporate funds to defray litigation costs, even though corporation itself was not a plaintiff); *Mattel, Inc. v. Greiner & Hausser GmbH,* 354 F.3d 857, 863 (9th Cir.2003) (stating that "G & H performed an act and purposefully availed itself of the privilege of conducting activities in California when it filed the lawsuit against Mattel in 1961."); *Trinity Indus., Inc. v. Myers & Assoc., Ltd.,* 41 F.3d 229, 230–31 (5th Cir.1995)(finding personal jurisdiction over an Illinois law firm in the Northern District of Texas, when the law firm engaged in continuous representation of a Texas client for a period of eight years, including a three-year lawsuit in the Northern District of Texas); *Cincinnati Ins. Co. v. RBP Chemical Technology, Inc.,* No. 1:07–CV–699, 2008 WL 686156, at *5 (E.D.Tex. March 6, 2008) ("Purposeful availment of a state's facilities, such as use of the state's courts, is sufficient to subject a party to personal jurisdiction in a later suit related to the same overall transaction"); *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies,* 833 F.Supp. 437, 446 (D.Del.1993) (holding that by "authorizing and directing the filing of Mobil's declara-tory judgment lawsuit in Delaware, [the corporate officers] purposefully availed themselves of the benefits and protections of Delaware.").

■ Second, the cause of action arose from Defendants' activities in Tennessee. The joint venture agreement allegedly entered into by the Wolf firm was with a Tennessee law firm (the Glassman firm) and involved providing legal services for litigation in Tennessee. The Glassman firm performed numerous legal services in furtherance of the agreement in this state and for the benefit of Defendants and their clients. While the settlement agreements were negotiated and entered into in another forum and the funds are currently being held in an account in New York, the "cause of action" is not simply the settlement of the cases (as Defendants argue), but instead includes the purported agreement for legal services and the rendering of those services by Plaintiffs.

■ Finally, in addressing the "reasonableness" of exercising jurisdiction, the defendant bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the multi-factor test articulated by the Supreme Court in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The factors include the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive and social policies. *Id.* at 477, 105 S.Ct. 2174; *See also Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 554–55 (6th Cir. 2007); *Intera Corp. v. Henderson,* 428 F.3d 605, 618 (6th Cir.2005); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1267–68

(6th Cir.1996). Here, Plaintiffs have a strong interest in obtaining relief in this forum, particularly since this court presided over the underlying ACR Litigation. The burden on Defendants is minimal, given their prior involvement in the ACR Litigation. Obviously, Tennessee has a strong interest in contractual agreements relating to legal services performed in the state. Although there is a similar action pending in state court in New York involving the same parties, the court finds that this fact does not overcome the other factors and, therefore, Defendants have not met their burden of presenting a compelling case that jurisdiction would be unreasonable.

For the above reasons, the court denies Defendants' motion to dismiss for lack of personal jurisdiction.

## D. First–to–File Doctrine

As discussed above, shortly before the instant action was filed in this district, Defendants filed an action against the Glassman and Audet firms in New York state court, alleging tortious interference with the settlement. The New York case was filed on May 14, 2008, two weeks before the Glassman and Audet firms filed the present case. Defendants argue that, under the "first-to-file" doctrine, the present case should be dismissed in favor of the New York action.

The Sixth Circuit has defined the first-to-file doctrine as "a well-established doctrine that encourages comity *among federal courts of equal rank.*" *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed.Appx. 433, 437 (6th Cir. 2001) (emphasis added); *see also Powervip, Inc. v. Static Control Components, Inc.*, No. 1:08–CV–382, 2009 WL 152106, at *2 (W.D.Mich. Jan. 21, 2009). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Id.* (citing *In re Burley*, 738 F.2d 981, 988 (9th Cir.1984)); *see also Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551–52 (6th Cir.2007); *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n. 8 (6th Cir.2004).

In the Sixth Circuit, the first-to-file doctrine has been applied only in situations in which two nearly identical suits have been filed in two different *federal* courts. *See Zide*, 16 Fed.Appx. at 437; *Certified Restoration*, 511 F.3d at 551–52; *AmSouth*, 386 F.3d at 791 n. 8. In one instance, the Sixth Circuit has specifically noted that the first-to-file doctrine applies only in situations involving competing federal cases: "the first-file rule only applies to two cases filed in separate federal courts." *AmSouth*, 386 F.3d at 791 n. 8. Since the present conflict is between a state case and a federal case, the court declines to follow the first-to-file doctrine.

## III. CONCLUSION

For the reasons above, the motion to dismiss is denied.