**ZIDE SPORT SHOP OF OHIO, INC., Robert M. Zide, Rodney M. Zide, and Pro–Line, Inc., Plaintiffs–Appellants,**

v.

**ED TOBERGTE ASSOCIATES, INC., d/b/a Gear 2000, and Edward H. Tobergte, Defendants–Appellees.**

No. 00–3183.

United States Court of Appeals, Sixth Circuit.

July 31, 2001.

Before KEITH, SILER, and CLAY, Circuit Judges.

SILER, Circuit Judge.

Plaintiffs Zide Sport Shop of Ohio, Inc., Robert M. Zide ("Zide"), Rodney M. Zide ("Rodney") and Pro–Line, Inc. ("Pro–Line") filed a declaratory judgment action against defendants Ed Tobergte Associates, Inc. ("ETA") and Edward Tobergte in the Southern District of Ohio. Subsequent to the plaintiffs' filing but before being served with the complaint, the defendants filed suit against the plaintiffs in the District of Kansas. Upon defendants' motion, the Southern District of Ohio dismissed plaintiffs' declaratory judgment action. We affirm.

## I. Background

This case arises from various business dealings among the plaintiffs and defendants. Prior to its dissolution in December 1996, Gear 2000, Ltd. ("Gear 2000") purchased all rights to the Air Release shoulder pad from Zide, James Rector, and Pro–Line. Gear 2000 also purchased assets in Athletic Technologies, Inc. ("ATI"), a corporation that was chaired by Zide. Gear 2000 and ATI entered into a noncompetition agreement, which limited ATI's rights. Furthermore, Pro–Line and Zide each entered into an agreement to provide various professional services to Gear 2000. In December 1996, Gear 2000 dissolved, entering into an asset purchase agreement with ETA. Pursuant to that agreement. ETA purchased Gear 2000 assets and continued to conduct business under the name Gear 2000.

Zide, Rector, Pro–Line, and ATI were accused of violating various agreements that they had with Gear 2000. In November 1998, Robert Zide received a letter from counsel representing "Gear 2000"— counsel really represented ETA and Ed Tobergte as successors in interest to Gear 2000—that accused him of trademark infringement and breaching agreements made with Gear 2000. The letter stated that Gear 2000 would pursue a legal remedy if necessary, but that it would be willing to settle. Over the next few months, the parties made various settlement demands and offers.

No settlement offers were made after February 25, 1999. On that date, Gear 2000 sent a letter to Zide's counsel stating that "it would file suit if [it] did not receive a serious settlement offer within seven days...." Zide then obtained new counsel and, on March 3, 1999, that new counsel requested a twenty-five day extension so that he could review the matter and respond to Gear 2000's previous letter. "[I]n the spirit of settlement," Gear 2000 granted Zide a "final extension" until March 26, 1999.

On March 25, 1999, one day before the extension expired, the plaintiffs filed an action against the defendants in the Southern District of Ohio seeking trademark cancellation and declaratory relief. Rather than serving the defendants, Zide's counsel sent them a letter listing six reasons why his clients possessed no liability. The letter was drafted on March 26, 1999, and it did not inform the defendants of the federal action filed against them a day earlier. No further communication took place among the parties until May 11, 1999.

On May 11, 1999, ETA filed suit against the plaintiffs and others in the District of Kansas. ETA alleged federal and common law trademark infringement, unfair compe-

tition, breach of contract, tortious interference with contract, and interference with prospective business advantage. That same day, the plaintiffs were served with ETA's complaint. So that they could obtain Kansas counsel, the plaintiffs were given an extension of time, until July 2, 1999, to answer ETA's complaint.

On July 1, 1999, Zide filed an amended complaint in the Southern District of Ohio. The amended complaint added Rodney and Pro–Line, parties named in the Kansas action, as plaintiffs. ETA. d/b/a Gear 2000 and Edward Tobergte remained the defendants. The amended complaint sought cancellation of the AIR RELEASE® trademark and declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. On July 2, 1999, defendants were served with the both the original March 25, 1999 and the amended July 1, 1999 complaints.

Defendants filed a motion asking the Southern District of Ohio to exercise its discretion not to hear plaintiffs' declaratory judgment action by either dismissing or, in the alternative, transferring that action. The Southern District of Ohio granted the motion and dismissed the action.

## II.  Standard of Review

Prior to the Supreme Court's decision in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), this court "held that entertainment of a declaratory judgment action is discretionary with the trial court, but that that discretion is reviewable on a de novo basis by the Court of Appeals...." *American Home Assurance Co. v. Evans*, 791 F.2d 61 (6th Cir.1986). But in *Wilton,* a declaratory judgment case where a parallel state proceeding existed, the Supreme Court stated:

> [D]istrict courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily

bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion. We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example. cases raising issues of federal law or cases in which there are no parallel state proceedings.

515 U.S. at 289–90, 115 S.Ct. 2137. Plaintiffs argue that *Wilton* establishes an abuse of discretion standard for declaratory judgment actions only where a parallel state proceeding exists. In cases where no parallel state proceeding exists, such as this case, they contend that this court should still apply de novo review.

■ We reject plaintiffs' position that de novo review is still appropriate in cases where no parallel state proceeding exists. Since *Wilton,* we have applied the abuse of discretion standard in all cases where district courts have decided whether to entertain declaratory judgment actions. *See, e.g., Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design,* 244 F.3d 521, 526 (6th Cir.2001) (applying the abuse of discretion standard where no parallel state proceeding existed); *Scottsdale Ins. Co. v.. Roumph,* 211 F.3d 964, 967 (6th Cir.2000) (applying the abuse of discretion standard where a parallel state proceeding existed). Therefore, we will review for abuse of discretion here.

## III.  Discussion

Plaintiffs contend that the Southern District of Ohio abused its discretion by dismissing their declaratory judgment action. They argue that a) the first-to-file rule precluded dismissal and b) the district court misapplied the standard used to determine whether it should entertain a declaratory judgment action.

### a. First–To–File Rule

A plaintiff has 120 days after he files his complaint with the court to effect service of the summons and complaint upon a defendant. *See* Fed.R.Civ.P. 4(m). For purposes of first-to-file chronology, the date that an original complaint is filed controls. *See Plating Res., Inc. v. UTI Corp.,* 47 F.Supp.2d 899, 904 (N.D.Ohio 1999).

The first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, "the court in which the first suit was filed should generally proceed to judgment." *In re Burley,* 738 F.2d 981, 988 (9th Cir. 1984). The Sixth Circuit has referenced the rule without discussing it by name, *see In re American Med. Sys., Inc.,* 75 F.3d 1069, 1088 (6th Cir.1996); *Barber–Greene v. Blaw–Knox Co.,* 239 F.2d 774, 778 (6th Cir.1957), while other circuits have explicitly applied it. *See, e.g., Boatmen's First Nat. Bank of Kansas City v. Kansas Pub. Employees Ret. Sys.,* 57 F.3d 638 (8th Cir.1995); *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969 (3d Cir.1988); *In re Burley,* 738 F.2d at 981.

District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. *See, e.g., Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749–50 (7th Cir. 1987) (("[T]he mere fact that [plaintiff] filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation . . . to adopt such a rule here.") (internal citations omitted)). Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping. *See Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 628 (9th Cir.1991); *University of Pennsylvania,* 850 F.2d at 972.

### b. Declaratory Judgment Standard

The Declaratory Judgment Act empowers the district court to entertain certain actions, but it does not compel it to exercise the jurisdiction thus granted to it. *See* 28 U.S.C. § 2201(a); *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137. Discretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed. *See Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

The Sixth Circuit applies the following criteria to determine whether it is appropriate for a district court to issue a declaratory ruling:

> (1) when the judgment will serve a useful purpose in clarifying and settling the legal relationship in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declarations prayed.

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984) (quoting E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed.1941)). In assessing whether to exercise its discretion to accept jurisdiction in a declaratory judgment action, a district court considers five specific factors:

> (1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale*, 211 F.3d at 968 (quoting *Omaha Property & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447–48 (6th Cir.1991)).

#### c. Analysis

■ The Ohio district court reconciled the first-to-file rule and the declaratory judgment standard with the facts of this case. Even though it recognized that the plaintiffs were eligible for the first-to-file rule since their original complaint was filed on March 25, 1999, well before the defendants' Kansas complaint was filed on May 11, 1999, the court exercised its discretion and declined to enforce the rule. Likewise, it exercised its discretion not to entertain the plaintiffs' declaratory judgment action at all. In reaching its conclusions, the court found that the plaintiffs' original complaint was filed in bad faith, and that the plaintiffs had engaged in procedural fencing.

A finding of bad faith is overwhelmingly supported in the record. The plaintiffs misled the defendants by going along with written correspondence regarding settlement while, in fact, the plaintiffs had already filed but not served an anticipatory federal action. The plaintiffs knew that if a settlement was not reached, the defendants would seek legal recourse. Thus, they filed their federal action on March 25, 1999, the day before a negotiation extension period granted to them by the defendants expired. In a March 26, 1999 letter, plaintiffs' counsel merely listed six reasons that his clients faced no liability—he did not inform defendants that a federal action had been filed against them in Ohio. As the district court stated:

> If Plaintiffs' conduct was not mere deceptive gamesmanship, then they would have informed Defendants that they did not intend to make another settlement offer and would prefer to seek a judicial resolution. If it was not gamesmanship. Plaintiffs would not have filed suit in this Court during the extension period they requested for their new counsel. If it was not gamesmanship, they would have informed Defendants in the March 26, 1999 letter that they had filed suit.

The court also found that the "[d]efendants likely would have filed the Kansas action in early March 1999 and not waited until May 1999" had the plaintiffs not requested the extension period.

While Fed.R.Civ.P. 4(m) gives a plaintiff 120 days to serve a defendant before an action will be dismissed for lack of service, the rule does not state that a plaintiff's action cannot be dismissed during that 120 day period for other reasons. Here, the district court considered lack of service to be evidence of gamesmanship and procedural fencing, factors that also weigh in favor of dismissing a declaratory action. The plaintiffs did not serve defendants until July 2, 1999, after the plaintiffs had time to review the Kansas complaint. On July 1, 1999, in order to qualify for the first-to-file rule, the plaintiffs filed an amended complaint that incorporated parties and allegations first raised in the defendants' Kansas action.

Because the plaintiffs filed their complaint in bad faith and engaged in procedural fencing, the district court did not

abuse its discretion by dismissing the plaintiffs' action.

AFFIRMED.