Kelli CATANESE, Ross Corriette and James Waldron, individually and on behalf of all others similarly situated, Plaintiffs,

v.

UNILEVER d/b/a/ Breyers, Defendant.

Civ. No. 10–5755 (WHW).

United States District Court, D. New Jersey.

March 28, 2011.

Kelly Ann Noto, Mark C. Gardy, Gardy & Notis LLP, Englewood Cliffs, NJ, for Plaintiffs.

Aviva Y. Wein, Ronald J. Levine, Herrick Feinstein LLP, Princeton, NJ, for Defendant.

## OPINION

WALLS, Senior District Judge.

Defendant moves to dismiss, stay or transfer this matter pursuant to the first-filed rule. Plaintiffs oppose the motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. Defendant's motion to transfer is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action (the "Catanese action") on November 4, 2010, as a "nationwide class action against Breyers on behalf of all persons and entities in the United States who purchased Breyers All Natural Original Ice Cream containing alkalized cocoa or Breyers Smooth & Dreamy ½ fat All Natural Ice Cream containing alkalized cocoa" in any state from November 4, 2004, to present. (Pl. Ex. A, Compl. at ¶ 1.) Alternatively, the plaintiffs seek to represent any person or entity who purchased Breyers Ice Cream in the State of New Jersey. (*Id.*) Plaintiffs' complaint al-

leges that the defendant misrepresented Breyers Ice Cream as "all natural," when in fact it contained alkalized cocoa powder. (*Id.* at ¶ 2.) The plaintiffs allege that alkalized cocoa powder is chemically altered (making it non-natural). The chemically-altered cocoa powder (sometimes referred to as "Dutch cocoa") is "lower in the health-promoting flavanol antioxidants than natural cocoa." (*Id.* at ¶ 4.) The plaintiffs claim that the United States Food and Drug Administration ("FDA") "recognizes alkalization as a non-natural process," and that food created using an alkali ingredient must contain an appropriate disclaimer. (*Id.* at ¶ 5.)

The plaintiffs assert that the term "all natural" means "a product that does not have any chemically-altered or man-made ingredients." (*Id.* at ¶ 6.) They claim to be injured by "Breyers' misleading, inaccurate and deceptive labeling." They say that "Plaintiffs and the Class would not have purchased Breyers Ice Cream, or would have paid significantly less for Breyers Ice Cream," if the "all natural" representations had not been made. (*Id.* at ¶ 7.) The plaintiffs assert violations of the New Jersey Consumer Fraud Act, breach of warranty claims, unjust enrichment and common law restitution. (*Id.*, Counts I–V.) They seek injunctive and declaratory relief, including disgorgement of profits and compensatory damages. (*Id.*, Prayer for Relief.)

The defendant argues that this case is virtually identical to an earlier-filed putative class action pending in the United States District Court for the Northern District of California, entitled *Thurston v. Conopco, Inc. d/b/a Unilever*, No. 10–cv–4937. *Thurston* was filed on November 1, 2010. The *Thurston* plaintiffs seek to bring an action on behalf of themselves and "all consumers who, on or after October 20, 2006, purchased in the United States Breyers' Ice Cream products that were labelled all natural but contained alkalized cocoa processed with a synthetic ingredient." (Df. Ex. 2, Thurston Am. Compl. at ¶ 25.) Alternatively, the plaintiffs seek to represent purchasers of Breyers Ice Cream in California. (*Id.* at ¶ 26.) The plaintiffs have brought claims for common law fraud, violations of California state law, unjust enrichment and common law restitution. (*Id.*, Causes of Action.) They seek injunctive and declaratory relief, including disgorgement of profits and compensatory and punitive damages. (*Id.*, Prayer for Relief.)

The defendants also point to another class action, *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10–cv–4387 (PJH), which has been pending in the Northern District of California since September 2010. This action also concerns the use of the term "all natural" on ice cream containing alkalized cocoa, albeit ice creams bearing the Ben & Jerry's label. (Df. Ex. 3, Astiana Am. Compl.) Ben & Jerry's and Breyers are both Unilever brands.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). To transfer an action under Section 1404(a), venue must be proper both in the transferor court and the transferee court. *Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F.Supp.2d 349, 357 (D.N.J. 1998). The party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient than the current one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). "[T]he decision to transfer must incorporate all relevant factors to determine whether on balance the litigation would

more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Rappoport v. Steven Spielberg, Inc.,* 16 F.Supp.2d 481, 498 (D.N.J.1998) (quotation and citations omitted).

▮ A court balances private and public interests when deciding to transfer venue. *Jumara,* 55 F.3d at 879. Private interests include a plaintiff's choice of forum, a defendant's preference, convenience of the parties as indicated by their physical and financial condition, convenience of witnesses to the extent that they may be unavailable in one forum, and the location of books and records to the extent they could not be produced in alternative fora. *Id.* The public interests that a court considers include enforceability of a judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court congestion, local interest in deciding a local controversy, public policies of the fora, and familiarity of the district court with applicable state law. *Id.* at 879–80.

▮ The Third Circuit Court of Appeals has adopted the first-filed rule, which states that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988) (quoting *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941)). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.* at 971. Its primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977 (citing *Church of Scientology v. United States*

*Dept. of Army,* 611 F.2d 738, 750 (9th Cir.1979)). Although exceptions to the rule are rare, it is not a "rigid or inflexible rule to be mechanically applied" because it is grounded in principles of equity. *Id.* at 976–77 (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982)). Rare or extraordinary circumstances, inequitable conduct, bad faith, and forum shopping are proper bases upon which a court may decline to apply the first-filed rule. *Id.* at 976.

## DISCUSSION

### A. Applicability of the First–Filed Rule

▮ The Court finds that the first-filed rule is applicable here, as between the *Catanese* action and the *Thurston* action. As this Court has previously recognized, the most important consideration in a first-filed rule analysis is overlapping subject matter. *Ivy–Dry, Inc. v. Zanfel Labs., Inc.,* Civ. No. 08–4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) (citing *EEOC,* 850 F.2d at 971). The plaintiffs argue that their complaint is not duplicative, saying that it "assert[s] entirely different claims on behalf of an entirely different class." (Pl. Br. at 1.) However, they concede that "the *Thurston* Action has similar allegations to the New Jersey Action." (Pl. Br. at 8.) The Court finds that the overlapping subject matter of these two actions cannot be denied with a straight face. Both actions name Unilever's Breyers brand as the target defendant, and assert claims on behalf of a nationwide class of consumers who purchased Breyers ice cream containing alkalized cocoa.[1] Each complaint asserts claims concerning an identical list of twenty-three ice cream flavors.[2] Both com-

1. Compare Catanese Compl. ¶ 1, with Df. Ex. 2, Thurston Compl. ¶ 1.

2. Compare Catanese Compl. ¶ 33, with Df. Ex. 2, Thurston Compl. ¶ 21.

plaints allege that alkalized cocoa is not natural,[3] describe the "Dutch" processing in detail,[4] and allege that this process destroys flavanols present in the cocoa.[5] Both complaints cite the Breyers website,[6] FDA issuances,[7] and claims made by the Center for Science in the Public Interest.[8] Both complaints allege that the plaintiffs relied upon Breyers misrepresentations, and bring claims for consumer fraud and unjust enrichment. The plaintiffs seek similar relief, including disgorgement of profits, an injunction and damages.

The plaintiffs assert that there is not identity of the parties because the two actions were brought on behalf of different classes. This Court has previously said that "a plain reading of the Third Circuit's opinion in *EEOC* strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties." *Ivy–Dry*, 2009 WL 1851028, at *5 (citing *EEOC*, 850 F.2d at 971). "If the first-filed rule failed to focus on the overlap of the subject matter it might encourage rather than discourage duplicative suits because parties who are aware of pending suits but not yet party to them might seek to file suit in more favorable fora." *Id.* at *6. That is exactly what would happen here if the first-filed rule did not apply. The *Thurston* plaintiffs allege that Unilever's marketing of its Breyers ice cream products as "all natural" is false and misleading because they contain a "non-natural" ingredient, namely alkalized cocoa powder. The *Catanese* plaintiffs make the exact same allegations against the exact same defendant, but have brought suit in New Jersey, where they are seeking treble damages under the New Jersey Consumer Fraud Act. (Pl. Ex. A, Compl., Prayer for Relief.) This is the sort of situation that the first-filed rule is intended to prevent.

Moreover, "[i]n a class action, the classes, and not the class representatives, are compared." *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D.Cal. 2008). Here, the class representatives are different, but the proposed classes are identical (i.e., a nationwide class of purchasers of Breyers' ice cream containing alkalized cocoa). If nationwide classes were certified in both actions, each of the named plaintiffs would be included in the other's class. This Court cannot allow a parallel action to proceed which involves putative absent class members from an earlier-filed class action. Such a situation would cause substantial duplication of effort, and worse, potentially inconsistent rulings. This would frustrate one of the primary purposes of the rule, which is to avoid the embarrassment of conflicting judgments. *EEOC*, 850 F.2d at 977.

The plaintiffs argue that the *Thurston* complaint should not be considered "first filed" because it was filed "a mere three days before the *Catanese* action." (Pl. Br. at 11.) Plaintiffs do not dispute, however, that *Thurston* was filed *first*, and that is all that matters for purposes of the rule. The plaintiffs cite district court opinions from Kansas and Virginia for the proposition that "small differences" between filing dates may be ignored. However, the Third Circuit has held that the policy rea-

---

**3.** Compare Catanese Compl. ¶ 2, with Df. Ex. 2, Thurston Compl. ¶ 1.

**4.** Compare Catanese Compl. ¶ 37, with Df. Ex. 2, Thurston Compl. ¶ 13.

**5.** Compare Catanese Compl. ¶ 37, with Df. Ex. 2, Thurston Compl. ¶ 13.

**6.** Compare Catanese Compl. ¶ 28, with Df. Ex. 2, Thurston Compl. ¶ 22.

**7.** Compare Catanese Compl. ¶ 42, with Df. Ex. 2, Thurston Compl. ¶ 14.

**8.** Compare Catanese Compl. ¶ 45, with Df. Ex. 2, Thurston Compl. ¶ 21.

sons underlying the first-filed rule are "just as valid when applied to the situation where one suit precedes the other *by a day* as they are in a case where a year intervenes between the suits." *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3d Cir.1942) (emphasis added). Moreover, the cases cited by the plaintiffs involved application of an exception to the rule where declaratory judgment actions were brought as pre-emptive strikes to avoid the second forum, *see Boilermakers Nat'l Health and Welfare Trust v. Steele,* Civ. No. 09–2329, 2010 WL 2287477 (D.Kan. June 2, 2010) and *Emp'rs Reinsurance Corp. v. MSK Ins. Ltd.,* Civ. No. 01–2608, 2003 WL 21143105 (D.Kan. Mar. 31, 2003), or where jurisdiction over the defendant in the first-filed case was doubtful. *See Affinity Memory & Micro v. K & Q Enter.,* 20 F.Supp.2d 948 (E.D.Va. 1998).

 Plaintiffs also argue that if *Thurston* is found to be first-filed, that the original *Thurston* complaint should control for purposes of the rule, rather than the amended complaint, because Thurston "originally asserted only California state law claims on behalf of a California class of individuals." (Pl. Br. at 1.) The plaintiffs argue that the *Catanese* action "was actually the first-filed action that sought to certify a national class of Breyers Ice Cream purchasers." However, as this Court has previously stated, "the [relevant] date for purposes of the first-filed rule is when the case is filed, not when any amended complaint is filed." *Ivy–Dry,* 2009 WL 1851028, at *5.

Finally, the plaintiffs argue that the first-filed rule is inapplicable because the actions seek to apply different state law. The Court finds that the differences in the causes of action and remedies sought are insufficiently material to prevent application of the first-filed rule. The factual allegations underlying these claims are exactly the same. The plaintiffs in both cases accuse Unilever of misleading consumers by labeling ice cream containing alkalized cocoa as "all natural." Where two actions filed in different districts involve the same parties and the same issues, and "differ only as to the remedy sought," the first-filed rule applies. *See Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95–96 (9th Cir.1982). Again, overlapping subject matter is the key; exact identity of claims is not required. *See Ivy–Dry,* 2009 WL 1851028, at *2 (finding that the first-filed rule applied despite additional claims in second action for common law trade and product disparagement, tortious interference, defamation and unfair competition). Indeed, in a class action situation such as this, it would be impossible for the claims to overlap exactly where the actions are brought in different states, and the purpose of the rule would be defeated. There would be nothing to stop plaintiffs in all 50 states from filing separate nationwide class actions based upon their own state's law. The Court finds that the first-filed rule applies and that transfer is warranted.

### B. *Transfer*

The Court must also consider whether transfer is appropriate under Section 1404. Because the subject matter of the respective cases is the same, the interest each plaintiff holds in the forum of its choice does not tip the balance. *See Kowalski v. YellowPages.com, LLC,* Civ. No. 09–2382, 2010 WL 3323749, at *9 (D.N.J. Aug. 18, 2010) ("A plaintiff's choice of forum is a preference, and not a right. Courts have consistently held that the weight accorded to a plaintiff's choice of forum is considerably reduced in class actions.") (citations omitted). To credit one plaintiff's interest in its chosen forum is to discredit the same interest of the other plaintiff. The plain-

tiffs insist that New Jersey is the appropriate venue for this action because the defendant's corporate headquarters and principal place of business are in New Jersey. However, what plaintiffs ignore is that the California action will continue, regardless. There has been no argument that the defendant is not subject to personal jurisdiction in California, and the defendant has not challenged that court's jurisdiction. This factor alone favors transfer. *See Am. Inst. for History Educ., LLC v. E–Learning Sys. Int'l LLC,* Civ. No. 10–2607, 2010 WL 4746233, at *3 (D.N.J. Nov. 16, 2010) ("Courts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue.") (citations omitted).

Conducting this class action in one forum will benefit both the public and private interests by avoiding duplicative litigation. If actions continue in both California and New Jersey, Unilever will be forced to defend identical actions on opposite ends of the country. This would inevitably include duplication of a large amount of discovery and documentary evidence. In comparison, there is very little burden on the plaintiffs. Their involvement is limited to purchasing ice cream. They will have little, if any, documentary evidence to contribute. Finally, transfer would be in the public interest. To permit this case to continue in New Jersey while an identical cause of action proceeds in California involving the same issues and overlapping class members would be an inefficient use of judicial resources. Transfer will promote judicial efficiency, economy and consistency of results.

## C. *Exceptions to the First–Filed Rule*

■ As noted, a court can decline to apply the first-filed rule where there is evidence of bad faith, anticipatory suit, or forum shopping. *EEOC,* 850 F.2d at 976. The plaintiffs allege that the *Thurston* plaintiffs have engaged in forum shopping. The plaintiffs point out that on October 20, 2010, counsel representing the *Thurston* plaintiffs ("California counsel") filed a complaint on behalf of plaintiff Tanasha Denmon–Clark entitled *Clark v. Conopco, Inc. d/b/a/ Unilever,* Civ. No. 10–7898–VBF (OPX) (C.D.Cal.) (Pl. Ex. D, Denmon–Clark Compl.) This action was filed in the Central District of California on behalf of California consumers who purchased Breyers ice cream containing alkalized cocoa. The *Denmon–Clark* action was assigned to a district judge. (Pl. Ex. E, Docket Sheet.)

Four days after the *Denmon–Clark* action was assigned, California counsel filed the *Thurston* complaint in the Northern District of California, which was identical to the complaint filed on behalf of Tanasha Denmon–Clark. The only difference was the first-named plaintiff, who was now Chanee Thurston. (Pl. Ex. F, Thurston Compl.) California counsel then filed a notice of voluntary dismissal of the *Denmon–Clark* action the following day. (Pl. Ex. G, Notice of Voluntary Dismissal.) The defendant has filed a motion to dismiss the *Thurston* action, based in part upon California counsel's alleged forum shopping. (Pl. Ex. H, Unilever Motion to Dismiss.)

The defendant argues, and it is true, that this type of "forum shopping" scenario is unlike those typically found to fit within the forum shopping exception. Normally, a plaintiff must establish that the defendant in the second action (Unilever) filed the first action (Thurston) to avoid the second forum (New Jersey). *See, e.g., EEOC,* 850 F.2d at 978; *FMC Corp. v.*

*AMVAC Chem. Co.*, 379 F.Supp.2d 733 (E.D.Pa.2005). That is not the case here. Instead, it is alleged that the *Thurston* plaintiffs re-filed in the Northern District of California in order to avoid the Central District of California. However, the rule also permits exception where there is evidence of inequitable conduct and bad faith. *See EEOC*, 850 F.2d at 976. It is disingenuous for the defendant to argue that there is no forum shopping here, while simultaneously trying to dismiss the *Thurston* action on forum shopping grounds. The Court finds that it would be an inequitable result if this case were transferred to California, only to be dismissed due to the *Thurston* plaintiffs' forum shopping. This would unfairly deprive the *Catanese* plaintiffs of their day in court, and the opportunity to have the merits of their substantive claims evaluated. In order to prevent such a result, the Court will transfer the *Catanese* action to California, but grant the plaintiffs leave to re-file if the *Thurston* action is dismissed on procedural grounds.

### D. *The Astiana Action*

The Court does not reach the defendant's arguments regarding the *Astiana* action in California because it finds sufficient similarity between the *Thurston* and *Catanese* actions for the first-filed rule to apply. The fate of the *Astiana* action is for the California courts to decide.

### CONCLUSION

The Court concludes that this matter should be transferred to the Northern District of California. The plaintiffs are granted leave to re-file if, after the pending motion to dismiss is decided, the *Thurston* action is dismissed on procedural grounds.