RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHARD BAATZ, et al.,

  *Plaintiffs-Appellants,*

  *v.*

COLUMBIA GAS TRANSMISSION, LLC,

  *Defendant-Appellee.*

No. 15-3208

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:14-cv-00505—Lesley Brooks Wells, District Judge.

Argued: January 13, 2016

Decided and Filed: February 24, 2016

Before: COLE, Chief Judge; SUHRHEINRICH and ROGERS, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Daniel F. Lindner, Cleveland, Ohio, for Appellants. Paul K. Stockman, MCGUIRE WOODS, LLP, Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:** Daniel F. Lindner, Cleveland, Ohio, for Appellants. Paul K. Stockman, Branden P. Moore, MCGUIRE WOODS, LLP, Pittsburgh, Pennsylvania, Jodie Herrmann Lawson, MCGUIRE WOODS LLP, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

_____

COLE, Chief Judge. The Plaintiffs-Appellants, a group of almost 40 landowners in Medina, Ohio, (the "Medina Landowners") sued Columbia Gas Transmission in the Northern District of Ohio for storing natural gas under their property without compensation in violation of the Natural Gas Act, 15 U.S.C. § 717f. The district court dismissed the case under the "first-to-

1

file rule" on the ground that it was duplicative of an earlier-filed class action being litigated in the Southern District of Ohio, *Wilson v. Columbia Gas Transmission LLC*, No. 2:12-cv-01203. The Medina Landowners appeal the dismissal of their suit, arguing alternatively that the first-to-file rule does not apply, but that if it does, dismissal was not an option available to the district court.

The first-to-file rule does apply to this case, but dismissal was an abuse of the district court's discretion given the jurisdictional and procedural hurdles the plaintiffs face to having their claims heard in *Wilson*. We therefore reverse and remand to the district court for further proceedings.

## I. BACKGROUND

As this is an appeal from a motion to dismiss, we take the facts alleged in the complaint as true. *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 604 (6th Cir. 2010). Each of the Medina Landowners owns property that sits, at least partially, on top of the "Medina Field," a naturally-occurring system of porous underground rock. Defendant-Appellee Columbia Gas Transmission stores natural gas in the Medina Field. Columbia pumps natural gas into the Medina Field during the summer when demand is low, and then withdraws it during the winter when demand is high. The Medina Field is one of fourteen such natural gas storage fields in Ohio used by Columbia.

Under the Natural Gas Act, Columbia received a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission ("FERC") that allows it to store gas in the Medina Field. *See* 15 U.S.C. § 717f(c)–(e). In exchange for this privilege, Columbia was required to compensate any landowner who owns part of the Medina Field. Columbia could have reached a contractual agreement with each landowner, or, if unable to reach an agreement with a landowner, Columbia could have brought an eminent domain proceeding in the federal district court where the property is located. *See* 15 U.S.C. § 717f(h).

The Medina Landowners allege that Columbia stored gas in the Medina Field for an indeterminate amount of time without offering to compensate them. When this conduct finally was brought to light, Columbia offered each of the Medina Landowners $250 per lot in exchange

for an easement allowing natural gas storage. Although each of the Medina Landowners rejected this offer, Columbia did not bring eminent domain proceedings against them in the Northern District of Ohio as allegedly required under the Natural Gas Act.

Other landowners in Ohio have accused Columbia of similar behavior with respect to all the natural gas storage fields in the state. On December 21, 2012, a group of landowners brought a class action against Columbia in the Southern District of Ohio for this conduct. Complaint, *Wilson v. Columbia Gas Transmission LLC*, No. 2:12-cv-01203 (S.D. Ohio Dec. 21, 2012), ECF Doc. 2. The putative class in *Wilson*—which has not yet been certified—includes all landowners in Ohio who have had Columbia store natural gas underneath their property without compensation. The Medina Landowners fall within *Wilson*'s putative class.

On March 5, 2014, the Medina Landowners filed this action against Columbia in the Northern District of Ohio, where Medina is located, seeking damages as well as declaratory and injunctive relief. The claims in this case are nearly identical to those brought in *Wilson*: both actions include claims of trespass and unjust enrichment under Ohio law, and inverse condemnation under the Natural Gas Act. There are only two differences between the Medina Landowners' complaint and the *Wilson* complaint. First, *Wilson* has additional claims seeking damages for the "native" natural gas occurring in the storage fields Columbia takes when it withdraws the gas it has injected. Second, the Medina Landowners' claims relate only to the Medina Field rather than being on behalf of a putative class covering all Ohio natural gas storage fields.

On April 22, 2014, in response to the Medina Landowners' complaint, Columbia filed a counterclaim in *Wilson* seeking to exercise its power of eminent domain over every member of the putative class it could identify and join them all to the *Wilson* suit. *See* First Amended Counterclaim in Condemnation, *Wilson v. Columbia Gas Transmission LLC*, No. 2:12-cv-01203 (S.D. Ohio Apr. 22, 2014), ECF Doc. 275; *see also* Fed. R. Civ. P. 13, 71.1. Columbia named over 1,000 individual Ohio landowners as counterclaim-defendants, including the Medina Landowners.

Columbia then moved to dismiss the Medina Landowners' suit, arguing that *Wilson* was filed first and that the Medina Landowners should litigate their claims in that action. The district court applied the first-to-file rule and granted the motion. This timely appeal followed.

## II. ANALYSIS

We review the district court's application of the first-to-file rule for abuse of discretion. *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997) (en banc) (citing *Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978)).

The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts. Simply stated, it provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (quoting *Zide Sport Shop of Ohio v. Ed Tobergate Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)); *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation."). This rule "encourages comity among federal courts of equal rank." *Zide Sport Shop*, 16 F. App'x at 437; *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728–29 (5th Cir. 1985). It also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results. *EEOC v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988); *West Gulf Maritime*, 751 F.2d at 729.

In order for suits filed in different districts to be duplicative, they must involve "nearly identical parties and issues." *Certified Restoration*, 511 F.3d at 551 (quoting *Zide Sport Shop*, 16 F. App'x at 437). While there is a paucity of Sixth Circuit case law explaining how to apply the first-to-file rule, courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). If these three factors support application of the rule, the court must also determine whether any equitable considerations, such as evidence of "inequitable conduct, bad faith, anticipatory suits, [or] forum

shopping," merit not applying the first-to-file rule in a particular case. *Certified Restoration*, 511 F.3d at 551–52 (quoting *Zide Sport Shop*, 16 F. App'x at 437) (changes omitted); *see Alltrade*, 946 F.2d at 627–28.

## A. Application of the First-to-File Rule

Each of the three factors is satisfied in this case. Therefore, the first-to-file rule presumptively applies.

## 1. Chronology of Events

The first factor to consider is the chronology of the filings in the two cases. Here, there are three relevant dates. On December 21, 2012, the *Wilson* plaintiffs filed their class action in the Southern District of Ohio. On March 5, 2014, the Medina Landowners filed this action against Columbia in the Northern District of Ohio. And finally, on April 22, 2014, Columbia filed a counterclaim in *Wilson* where it attempted to join the Medina Landowners as counterclaim-defendants in a condemnation action.

The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 n.3 (9th Cir. 1982). The Medina Landowners emphasize that Columbia has never filed a complaint, and argue that, in any event, they have the first-filed claim because they filed this complaint before Columbia filed its counterclaim in *Wilson*. They therefore argue that the first-to-file rule does not apply because, as between the Medina Landowners and Columbia, there is no earlier-and later-filed complaint.

The Medina Landowners are correct that Columbia has never filed a complaint. But the *Wilson* plaintiffs filed their complaint over a year before the Medina Landowners filed this case. As explained below, *Wilson* covers substantially the same parties and issues and has the potential to completely resolve the Medina Landowners' claims. Given the similarity between the parties and issues, the "chronology of events" factor simply asks which of the two overlapping cases was filed first. *See id.* at 95–96; *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424 (2d Cir. 1965) ("[T]he [earlier-filed] suit was the first suit which . . . raise[d] all the substantial issues

between the parties.”); *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011). Because *Wilson* was filed over a year before this case and can resolve all the issues between the Medina Landowners and Columbia, the chronology of the two actions favors applying the first-to-file rule here.

**2. Similarity of the Parties**

The second factor to consider is the similarity of the parties involved. The first-to-file rule applies when the parties in the two actions “substantial[ly] overlap,” even if they are not perfectly identical. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997); *see Certified Restoration*, 511 F.3d at 551 (describing the first-to-file rule as requiring “nearly identical parties”).

The Medina Landowners argue that they are not properly parties in *Wilson*, and thus there can be no overlap. First, the Medina Landowners argue that because the *Wilson* putative class has not yet been certified, they are not parties to the class’s claims. Moreover, even if the class were certified, they say they would opt out. Second, the Medina Landowners argue that Columbia’s attempt to join them to *Wilson* by filing a counterclaim is procedurally improper.

As to their first argument, the Medina Landowners are correct that, unless and until the *Wilson* class is certified by the Southern District of Ohio, they are not parties to that case merely by virtue of being within the putative class. *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011). However, for purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified. *E.g.*, *Catanese*, 774 F. Supp. 2d at 688; *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147–48 (E.D. Cal. 2010); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 689–90 (E.D. Tenn. 2005); *cf. Ross v. U.S. Bank Nat’l Ass’n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (declining to apply first-to-file rule following denial of class certification in the first-filed action). The reason is fairly straightforward: if the opposite rule were adopted, the first-to-file rule might never apply to overlapping class actions as long as they were filed by different plaintiffs. Litigating a class action requires both the parties and the court to expend substantial resources. Perhaps the most important purpose of the first-to-file rule is to

conserve these resources by limiting duplicative cases. To serve this purpose, we must evaluate the identity of the parties by looking at overlap with the putative class. *See In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996) (noting the "waste of judicial resources" that could occur when potentially overlapping class actions create duplicative proceedings). Furthermore, if duplicative class actions were allowed to proceed unabated, the class members could be subject to inconsistent rulings. *See Univ. of Pa.*, 850 F.2d at 977.

The Medina Landowners undoubtedly would be members of the *Wilson* class if it were certified. Even though the *Wilson* class would also include additional members who are not plaintiffs in this action, what matters for our purposes is that Columbia and the Medina Landowners would be parties to both actions. This overlap satisfies the similarity of the parties factor.

This analysis is not affected by the Medina Landowners' representation that they would opt out of the class if it is certified. That is certainly their right if and when that day comes. *See* Fed. R. Civ. P. 23(c)(2). But allowing plaintiffs to use this representation to prevent the first-to-file rule from being applied in the first instance would undercut the purposes of the first-to-file rule: parties, not courts, would determine when the rule could be applied, and could force resource-draining duplicative class actions to proceed simultaneously. This would unduly burden the courts, and could be used as a vexatious litigation tactic. While the opt-out right may allow for (and perhaps anticipate) duplicative litigation, *see* Edward F. Sherman, *Class Actions and Duplicative Litigation*, 62 Ind. L.J. 507, 527 (1985), it should not prospectively prohibit courts' efforts to conserve resources by applying the first-to-file rule.

We need not address the Medina Landowners' second argument that Columbia did not properly join them to the *Wilson* action by naming them as "counterclaim defendants." The Medina Landowners will have ample opportunity to litigate this issue in *Wilson*, and may eventually seek review in this court if unhappy with the *Wilson* court's decision. Since their status as putative class members in *Wilson* satisfies the similarity of the parties factor, we need go no further in addressing this argument.

### 3. Similarity of the Issues

The third factor to evaluate in the first-to-file rule is the similarity of the issues or claims at stake. Just as with the similarity of the parties factor, the issues need only to substantially overlap in order to apply the first-to-file rule. *Save Power*, 121 F.3d at 950–51; *see Certified Restoration*, 511 F.3d at 551 (describing the first-to-file rule as requiring "nearly identical . . . issues"); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). The issues need not be identical, but they must "be materially on all fours" and "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Smith*, 129 F.3d at 361 (citation omitted).

The Medina Landowners assert the same claims and seek the same relief as the *Wilson* plaintiffs. In both cases, plaintiffs are alleging that Columbia illegally stored natural gas underneath their property without compensating them. Both actions raise the same claims arising under the same laws using the same theory of the case. Both cases seek damages, as well as declaratory and injunctive relief. *Wilson* adds additional claims of conversion and unjust enrichment for Columbia's taking of the native natural gas within storage fields owned by class members, but otherwise the two actions are identical.

The Medina Landowners argue that there can never truly be identity of the issues in a condemnation case, as all land is considered unique. But that argument only goes to damages, not liability. The *Wilson* court will address this argument when it determines whether the commonality and typicality requirements for class certification are met. *See* Fed. R. Civ. P. 23(a)(2)–(3). Furthermore, the *Wilson* court can tailor its proceedings to address this concern, for example by certifying subclasses or bifurcating the proceedings to allow class litigation as to liability while leaving damages for individual determinations. *See Helminski v. Ayerst Labs.*, 766 F.2d 208, 212 (6th Cir. 1985); Fed. R. Civ. P. 23(c)(4)–(5), 42(b).

If made parties to *Wilson*, the Medina Landowners would be litigating exactly the same issues and claims they seek to litigate in this case with the goal of obtaining exactly the same relief. For purposes of the first-to-file rule, it is enough that *Wilson* could completely cover the Medina Landowners' claims. The similarity of the issues factor is satisfied.

## B. Equitable Considerations

Although all three factors of the first-to-file rule are satisfied in this case, we must also evaluate whether there are any equitable concerns that weigh against applying it. Courts have repeatedly warned that the first-to-file rule "is not a mandate directing wooden application of the rule without regard to extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Univ. of Pa.*, 850 F.2d at 972. However, deviations from the rule should be the exception, rather than the norm. *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).

The Medina Landowners accuse Columbia of forum shopping by attempting to add them to the *Wilson* litigation, which will require them to travel to the Southern District of Ohio and litigate along with thousands of other landowners. They accuse Columbia of "hoping to cause delay, litigation fatigue and economic fatigue by burdening all parties and the court in *Wilson* with masses of filings and issues." Appellant's Br. at 25.

In response, Columbia asserts that it is merely pursuing a litigation strategy that seeks to minimize costs by aggregating all claims in a single action. Columbia is the defendant in both cases; it did not choose where it would be sued, or by whom. Columbia suggests that the Medina Landowners are the ones engaging in forum shopping: they could simply litigate their claims through *Wilson*, but are instead trying to start a separate action in a (presumably) more hospitable district.

The district court gave "some weight" to the Medina Landowners' equitable concerns, but ultimately found that they did not require deviating from the first-to-file rule. We agree with the district court that Columbia does not appear to have engaged in forum shopping, and instead merely "has taken steps to ensure that all the issues are litigated in a single case." This is not the classic case where one party has filed an anticipatory suit (usually a declaratory judgment action) in a preferred forum. *See Certified Restoration*, 511 F.3d at 552; *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004). Columbia was sued in the Southern District of Ohio. Over a year later, the Medina Landowners filed this action. Recognizing the obvious overlap, Columbia has sought to consolidate the cases in the forum where the litigation is more

developed. While this likely has some tactical advantage for Columbia, it does not necessarily suggest an improper motive.

It is within the discretion of the district court to decline to apply the first-to-file rule. *See Roth*, 583 F.2d at 538; *Zide Sport Shop*, 16 F. App'x at 437; *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952) ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration are equitable in nature."). True, the Medina Landowners will be somewhat inconvenienced by having to litigate their claims in the Southern District of Ohio. But declining to apply the first-to-file rule should be done rarely, and the equities do not clearly support finding that this is one of those rare cases.

## C. Power to Dismiss Under the First-to-File Rule

Although we agree the district court properly determined that the first-to-file rule applies in this case, we must also consider whether the district court abused its discretion by dismissing this suit. In *Smith*, sitting en banc, we said that "[w]hen a federal court is presented with . . . a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." *Smith*, 129 F.3d at 361 (citing *Kerotest*, 342 U.S. at 183–84). The Medina Landowners seize on this language and argue that these are the only three options available to a district court applying the first-to-file rule. Because dismissing the case is not listed as an option, the Medina Landowners say the district court erred in doing so.

We do not read *Smith* to create an exhaustive list. Other circuits have held that dismissal is an option available to a district court when applying the first-to-file rule. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999); *Alltrade*, 946 F.2d at 628; *Univ. of Pa.*, 850 F.2d at 976. In fact, in a post-*Smith* decision, we implicitly recognized that dismissal is an option by ordering a district court to dismiss a declaratory judgment action when a coercive suit was pending in another district. *See AmSouth*

*Bank*, 386 F.3d at 791–92; *see also Carter v. Bank One*, 179 F. App'x 338, 340 (6th Cir. 2006) ("Under the principle of comity, a district court properly may dismiss a case because of a previously filed case pending before another district court that presents the same issues and involves the same parties.").

Providing the district court discretion to dismiss a duplicative action fits with the purposes of the first-to-file rule and the need for the district court to have discretion in managing its docket. We cannot anticipate every situation involving the first-to-file rule that may arise, and will not limit the district courts' available options. The district court therefore did not entirely lack the authority to dismiss the suit. Dismissal may be an appropriate way to implement the first-to-file rule in some circumstances.

However, this is not one of those circumstances. Other circuits have said that a district court can abuse its discretion by dismissing a case under the first-to-file rule when doing so could adversely affect a party's interests. *E.g.*, *Alltrade*, 946 F.2d at 628–29; *Central States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir. 2000). Because the Medina Landowners raise serious concerns about their ability to have their claims heard in *Wilson*, dismissal was an abuse of discretion in this case.

While the Medina Landowners' status as putative class members in *Wilson* allows the first-to-file rule to be applied in this case, their status simultaneously suggests that dismissal is not an appropriate way of applying the rule. Both the Medina Landowners and Columbia argue that class certification is impossible in *Wilson*. If the class is ultimately not certified and the Medina Landowners succeed in their challenge to Columbia's counterclaim maneuver, the Medina Landowners will not be parties to *Wilson*. Those circumstances could prejudice the Medina Landowners' ability to have their claims heard on the merits.

For example, it may create statute of limitations problems. *See Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1989). While Columbia's counsel conceded at oral argument that the statute of limitations would be tolled until the *Wilson* certification issue is decided, we doubt they would so quickly concede that point in the district court. Furthermore, sometimes a party incorrectly believes tolling to have been available, only

to find out later it was wrong, thereby losing its case. *See, e.g., Menominee Tribe of Wis. v. United States*, 136 S. Ct. 750, 754–56 (2016).

Also, an involuntary dismissal is presumed to be with prejudice unless the dismissal order states otherwise. *See* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise . . . any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). The district court's dismissal order did not specify that it was without prejudice. As a result, the Medina Landowners will be barred from pursuing their claims against Columbia if the *Wilson* class is not certified, if it is certified and the Medina Landowners choose to opt out, or if the Medina Landowners successfully challenge being joined to *Wilson* via Columbia's counterclaim. *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1160–61 (5th Cir. 1992) (finding that dismissal with prejudice of claims in a similar, later-filed case was an abuse of discretion because the first-filed case had not yet come to a final judgment). Dismissal of this suit with prejudice thus precludes the Medina Landowners from fully protecting their interests, even while *Wilson* goes forward.

Further, the Medina Landowners argue that if the *Wilson* court does not grant class certification, but does allow them to be joined to *Wilson* via Columbia's counterclaim, that the condemnation proceeding will not afford them complete relief on their state-law trespass claims. They argue that they are entitled to distinct relief on this claim, separate and apart from the compensation they will receive under the eminent domain proceeding. If the *Wilson* court does not certify the class, then the Medina Landowners will not be covered by the named *Wilson* plaintiffs' trespass claim, and the Medina Landowners may not be able to assert their own trespass claim as a counterclaim to Columbia's counterclaim. We need not decide whether this argument is correct, as it is an issue that will need to be addressed by the *Wilson* court. But the argument further suggests that dismissal is inappropriate because the Medina Landowners' trespass claim may not be adjudicated on the merits in *Wilson*. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 28–29 (2d Cir. 1990).

Finally, the Medina Landowners have additional challenges to the jurisdiction of the Southern District of Ohio that are specific to the claims at issue in this case. The Natural Gas

Act requires that an eminent domain proceeding be brought in the district where the property is located. *See* 15 U.S.C. § 717f(h). The Medina Landowners therefore argue that the Southern District of Ohio is an improper venue to litigate claims related to their property, which is located in the Northern District of Ohio. Again, whether or not the *Wilson* court ultimately accepts these arguments does not matter for our purposes. The non-trivial possibility of a successful jurisdictional challenge suggests that this case should not have been dismissed. *See Burger v. Am. Maritime Officers Union*, 170 F.3d 184, 1999 WL 46962, at *2 (5th Cir. 1999) (unpublished table opinion) ("When the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed."); *Alltrade*, 946 F.2d at 627 ("[T]he fact that the Florida court's jurisdiction . . . is questionable weighs against *dismissing* the instant litigation."); *cf. Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) (dismissing first-filed suit when jurisdiction was more in doubt than the second-filed suit).

Having recognized these very issues, the district court should not have dismissed the case. The Medina Landowners have raised legitimate concerns about whether their claims will be heard in *Wilson*. The district court did not need to decide these issues on the merits; it is enough to note that they exist, are not frivolous, and could impair the plaintiffs' interests if this suit is dismissed. As Judge Posner succinctly put it: "Why take chances? It is simpler just to stay the second suit." *Asset Allocation*, 892 F.2d at 571.

We leave it to the district court on remand to decide how best to manage this action going forward. *See Curtis*, 226 F.3d at 139; *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1552 n.13 (11th Cir. 1986). We suggest, however, that staying this case while the *Wilson* court resolves the various issues raised by the Medina Landowners would probably be the most reasonable course of action.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of this case and remand for further proceedings consistent with this opinion.